Charles CEBENKA and Frances
Cebenka, his wife, Plaintiffs
Below, Appellants,

v.

The UPJOHN COMPANY, a Delaware
corporation, Defendant
Below, Appellee.

Supreme Court of Delaware.

Submitted: Jan. 4, 1989.

Decided: April 11, 1989.

C. Waggaman Berl, Wilmington, for appellants.

William Uffelman, Wilmington, pro se.

Richard P.S. Hannum, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellee.

Before CHRISTIE, C.J., MOORE and HOLLAND, JJ.

HOLLAND, Justice:

This is an appeal from a Superior Court order granting sanctions against the plaintiffs, Charles Cebenka and Frances Cebenka (collectively "Cebenkas"), and their trial attorney, William H. Uffelman, Esquire ("Uffelman"). The order awarded expenses and attorneys fees in the amount of $1,310.00 to the defendant, the Upjohn Company ("Upjohn"). The sanctions were imposed as a result of the Cebenkas failure to produce their expert witness for a deposition scheduled on April 27, 1988, near Philadelphia, Pennsylvania.

In this appeal, Uffelman argues that the Superior Court abused its discretion in ordering sanctions against him and his clients on the grounds that: (1) the imposition of sanctions pursuant to Superior Court Civil Rule 37 requires a finding of "willful or conscious disregard" of the order compelling discovery and/or "bad faith"; and (2) the Superior Court exceeded its power and authority by compelling a party to produce a non-party, nonresident deponent-witness, without a commission from the Superior Court and a subpoena from the state court where the deposition was to be held; and,

therefore, was without authority to impose sanctions for a violation of that order.

The Cebenkas are represented by independent counsel in this appeal. The Cebenkas join Uffelman in the argument that the element of "willfulness" and/or "bad faith" is required before a sanction can be imposed under Superior Court Civil Rule 37. However, specific to their own defense, the Cebenkas argue that in the interest of fairness, costs should not have been assessed against them. The Cebenkas submit that Uffelman alone directed their litigation. They state that they had "no control over the situation" and had "no active role in the circumstances" which led the Superior Court to impose sanctions.

Upjohn argues that the Superior Court had the inherent power and authority to enforce the pretrial stipulation and order which was entered pursuant to Superior Court Civil Rule 16. In particular, Upjohn argues that since the pretrial order provided that "the parties shall have an opportunity to depose all experts," the enforcement of that provision was within the discretion of the Superior Court, including its decision not to issue a commission and not to require a subpoena for the nonresident deponent. Alternatively, Upjohn argues that the award of expenses and attorney's fees was proper, upon failure to comply with a Court order directing discovery, pursuant to Superior Court Civil Rule 37(b)(2), and that for a sanction of costs, the moving party is not required to show the element of "willfulness" or "bad faith."

We find that the sanctions imposed by the Superior Court in this case are within its inherent power and authority and comport with the spirit and purpose of Superior Court Civil Rule 16. Therefore, in this appeal, it is not necessary to address the parties' contentions with respect to Rule 37.

### Facts

On April 19, 1980, the Cebenkas filed a complaint for medical malpractice against several physicians. The essence of the complaint was that the improper injection of a drug had resulted in a serious infection. The physician-defendants filed a third-party complaint against the drug manufacturer, Upjohn, alleging breach of warranty. In July of 1980, the Cebenkas filed an amended complaint against Upjohn, incorporating the allegation of breach of warranty. The Cebenkas ultimately dismissed their complaint against all of the physicians. The case proceeded against Upjohn alone.

The Cebenkas and Upjohn executed a pretrial stipulation. Following a pretrial conference, the Superior Court entered an order based upon the pretrial stipulation. The pretrial stipulation provided *inter alia,* that the "parties *shall* have an opportunity to depose all experts." In the pretrial stipulation and order, the key expert witness identified by the Cebenkas in their case against Upjohn was Dr. Karl Abramson ("Abramson").

On August 20, 1987, Richard P.S. Hannum, Esquire ("Hannum"), Delaware counsel for Upjohn, wrote to Uffelman for the purpose of scheduling Abramson's deposition. When the Abramson deposition had not been scheduled by March 30, 1988, Hannum again contacted Uffelman's office. Hannum reiterated Upjohn's desire to depose Abramson in a letter dated March 31, 1988.[1] On April 4, 1988, Hannum and Uffelman orally agreed that Abramson's deposition would be scheduled by April 8, 1988. When this did not occur, Hannum filed a notice of Abramson's deposition and a motion to compel his appearance.

On April 19, 1988, the Superior Court held a hearing on Upjohn's motion to compel. At the hearing, Hannum requested that the Superior Court order the Cebenkas to produce Abramson for a deposition, under the penalty of having him stricken as a witness at trial. Uffelman explained that Abramson was uncooperative in scheduling his deposition because of an outstanding fee dispute between Abramson and the Ce-

---

1. In both letters, Hannum inquired of Uffelman as to whether a subpoena would be necessary.

benkas.[2] Uffelman described the dilemma as an "impasse."

The Superior Court advised Uffelman that since Abramson was the Cebenkas' expert witness, the impasse was his "clients' problem and not the defendant's problem." Uffelman requested a subpoena in light of the uncooperative nature of his expert nonresident witness. In response to that request, the Court stated that a subpoena would be "a little bit strained ... [in that] [t]he pretrial order ha[d] a stipulation that each side [could] depose the other's expert." The Court stated further that "in this case [the expert] will be cooperative if he got paid.... [I]t's up to the plaintiff to see he cooperates."

The Superior Court granted Upjohn's motion to compel and ordered Abramson's deposition for April 27, 1988, at 10:00 a.m., at a place mutually convenient to the parties or Dr. Abramson. Before the hearing adjourned and an order to compel was actually entered, Hannum advised the Superior Court and Uffelman that Upjohn's trial counsel and his associate were coming from Kansas City, Missouri, to take the Abramson deposition. Accordingly, Hannum requested adequate notice from Uffelman in the event that there was going to be a problem with Abramson's appearance. Uffelman agreed. Uffelman assured the Superior Court that adequate notice of a problem with Abramson would be given to Hannum and that a provision for such notice need not be a part of the order.

On April 26, 1988, Uffelman filed a motion to continue the Abramson deposition and also the trial. In the alternative, Uffelman moved to withdraw as counsel for the Cebenkas. According to the motion, Abramson refused to be deposed on April 27, 1988, because in the absence of an assurance about his fee, he had not prepared for the deposition.

In the motion for a continuance, Uffelman represented that he had contacted Abramson about the April 27 deposition on April 21, 1988. The motion stated that during a telephone conversation with Uffelman on April 21, 1988, Abramson demanded assurances in writing from Upjohn that his fee for the April 27 deposition would be paid. The motion stated that Uffelman received a hand-delivered letter from Upjohn containing such assurances on April 25, 1985. However, according to the motion, Abramson had not received his copy of the letter, as of April 26, 1988, when Uffelman called him.

A hearing was held on Uffelman's motion to continue Abramson's deposition. Hannum objected to a continuance on the grounds that Upjohn's trial counsel had already arrived from Kansas City, Missouri, had prepared for the deposition, and had expended funds for travel. The Superior Court found that Upjohn's request for sanctions by either dismissal of the case or an order precluding Abramson's testimony at trial were too extreme. The Superior Court granted Uffelman's motion for a continuance of the deposition. It held that the appropriate sanction would be the reimbursement of expenses and fees incurred because of the cancellation of Abramson's deposition, upon application by Upjohn.[3]

On June 2nd and 3rd, 1988, the Superior Court received testimony on the Upjohn motion for fees and expenses.[4] Additional

---

**2.** According to Uffelman, Abramson had spent two days at the Upjohn plant in Kalamazoo, Michigan; Abramson's bill covering that trip had not been paid in full; Abramson would not cooperate in scheduling his deposition until his prior bill was satisfied. Uffelman also explained that a similar case against Upjohn was pending in the federal district court, and that the plaintiffs and their attorney in that federal case had agreed with the Cebenkas to divide and share the costs of discovery. These persons had

not paid their share of Abramson's outstanding bill.

**3.** Uffelman's motion to withdraw as the Cebenkas' attorney was denied.

**4.** On May 11, 1988, defendant's counsel filed a motion for the assessment of costs. The affidavit accompanying the motion estimated the total cost and expenses surrounding the aborted deposition at $6,248.00. At this conference, the

facts surrounding the April 27, 1988 deposition were presented. In response to questions by Upjohn's counsel, Abramson testified that according to his personal notes, the first time he was informed by Uffelman about the deposition scheduled for April 27, 1988, was on April 25, 1988, at 4:10 p.m. Abramson testified that prior to this time he had not heard from Uffelman for several years. However, in response to questions by Uffelman, Abramson admitted that "maybe" he also had a conversation with Uffelman regarding the deposition on April 22, 1988.

Uffelman testified that the on-going prior fee dispute with the Cebenkas was originally the primary barrier to Abramson's full cooperation on the April 27 deposition. Uffelman stated that the dispute with the Cebenkas existed, in part, because they thought Abramson's fee for prior services was exorbitant and unfair.[5] Uffelman testified that he met with the Cebenkas on April 21, 1988, and that they finally agreed to pay the full outstanding fee to Abramson ($5,500.00). Uffelman testified that he called Abramson on April 21, 1988, and informed him of the promised payment.

Uffelman testified that it was during this conversation that Abramson insisted on a written assurance from Upjohn that it would pay his fee for the upcoming deposition. Uffelman testified that he received Upjohn's assurance in a hand-delivered letter and "presumed" that a copy of the letter had also been sent to Abramson. Uffelman testified that on April 26, 1988, he called Abramson and learned for the first time that he had not received the written assurance from Upjohn. Uffelman testified that, even after he told Abramson about Upjohn's letter, Abramson refused to be deposed on April 27, because he did not have adequate time to prepare for the deposition.

At the conclusion of the hearing on Upjohn's motion for sanctions, the Superior Court ruled that the Cebenkas and Uffelman, as their attorney, were "chargeable with the failure to have Dr. Abramson available for deposition on April 27th." The Superior Court found that the fee dispute between Abramson and the Cebenkas, which was the underlying problem, was "basically ignored," and not actually paid until after the scheduled date of the deposition.[6] The Superior Court also concluded that the Cebenkas and their attorney, Uffelman, "did not make reasonable efforts to learn that Dr. Abramson was not going to be available on the 27th and to inform the defendants of that," so that their trial counsel could have avoided the trip to Philadelphia. The Superior Court declined to award Upjohn all of the expenses it claimed to have incurred. It ordered Uffelman and the Cebenkas to pay $1,310.00 to Upjohn.

### Purpose of Rule 16

The Civil Rules of the Superior Court are patterned upon the Federal Rules of Civil Procedure, which have been in effect since 1938. *Hoffman v. Cohen*, Del.Supr., 538 A.2d 1096, 1097 (1988). Superior Court Civil Rule 16 parallels Rule 16 of the Federal Rules of Civil Procedure. In both the Federal Rules of Civil Procedure and the Superior Court Civil Rules, Rule 16 governs pretrial procedure and management. Rule 16 provides authority for the pretrial conference. The pretrial conference and order is designed to familiarize the litigants with the issues in the case; reduce surprises at trial; and facilitate the overall litigation process. 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1522,

---

Superior Court determined that a hearing on the motion would be necessary.

**5.** According to Uffelman, in March of 1985, Abramson visited the Upjohn plant in Kalamazoo, Michigan, during which he charged the plaintiffs $100 per hour for the time he was sleeping, eating, and traveling. Uffelman testified that the plaintiffs' attorneys did not want to contest the merits of the fee dispute with the doctor for fear of alienating their key expert witness.

**6.** Abramson testified that he in fact received payment for his outstanding bill on April 28, 1988.

at 566 (1971). The pretrial order, which is entered following the pretrial conference, "controls the subsequent course of the action." Super.Ct.Civ.R. 16(a)(2) (Supp.1988).

### Present Federal Rule 16

In 1983, Federal Rule of Civil Procedure 16 was amended to reflect the changes in civil litigation that had occurred since the adoption of the original rule in 1938. *Id.* § 1521, at 307 (Supp.1987). The Advisory Committee on the rule change explained that the "amended rule shifts 'the emphasis away from a conference focused solely on the trial and toward a process of judicial management that embraces the entire pretrial phase, *especially motions and discovery.*'" *Id.* (citing Advisory Committee Note to the 1983 amendments, *reprinted at* 97 F.R.D. 165, 207 (1983)) (emphasis added). One of the changes made by the 1983 amendments was a new subdivision providing for sanctions, a provision lacking in the original rule:

(f) Sanctions. *If a party or party's attorney fails to obey a scheduling or pretrial order,* or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, *the judge, upon motion or his own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).* In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing him or *both* to pay the *reasonable expenses incurred because of any noncompliance with this rule,* including *attorney's fees,* unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 16(f) (emphasis added). Subdivision (f) specifically provides for sanctions against a party and/or their attorney for failure to obey a pretrial order. The new subdivision expressly incorporates sanctions found in Rule 37(b)(2)(B), (C), (D), the rule governing sanctions for failure to make discovery.[7] Sanctions now explicitly authorized by Federal Rule 16 include preclusion of evidence or testimony at trial,[8] dismissal,[9] default judgment,[10] attorney's fees,[11] and contempt for violation of a court order.[12] 3 J. Moore, *Moore's Federal Practice* ¶ 16.22, at 16–98 to –101 (2d ed. 1988).

### Prior Federal Rule 16

Although subdivision (f) now provides explicit authority to compel compliance with

---

**7.** Even prior to the 1983 amendments, courts and commentators recognized the interrelationship between Rule 16 and the discovery rules [Rules 26–37] and their similar goal of facilitating the flow of information so that adequate preparation for trial could be made. C. Wright & A. Miller, *Federal Practice and Procedure* § 1528, at 615 (1971). Rule 16 has been viewed as part of the general discovery process. *Id.* Consistent with this recognition of similarity in purpose, part of the sanctions provision for the discovery rules [Rule 37(b)(2)] was explicitly read into the pretrial order phase [Rule 16] by the addition of subdivision (f). "Rule 16 should thus be read in conjunction with ... Rule [37]." 3 J. Moore, *Moore's Federal Practice* ¶ 16.22, at 16–99 (1988). For a discussion of the interrelationship between Rules 16 and 37, see *Rabb v. Amatex Corp.,* 769 F.2d 996 (4th Cir.1985).

**8.** *Smith v. Rowe,* 761 F.2d 360 (7th Cir.1985). *Cf. Rabb v. Amatex Corp.,* 769 F.2d 996 (4th Cir.1985).

**9.** *Price v. McGlathery,* 792 F.2d 472 (5th Cir. 1986). *Cf. Yannitelli v. Navieras de Puerto Rico,* 106 F.R.D. 42 (S.D.N.Y.1985); *Reeves v. Travelers Insurance Cos.,* 421 A.2d 47 (Me.1980).

**10.** *Cf. Uxmal Corp. v. Wall Indus., Inc.,* 55 F.R.D. 219 (S.D.Fla.1972).

**11.** *In re Sanction of Baker,* 744 F.2d 1438 (10th Cir.1984), *cert. denied,* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985); *Smith v. Rowe,* 761 F.2d 360 (7th Cir.1985); *Ovitz v. Jefferies & Co.,* 102 F.R.D. 242 (N.D.Ill.1984); *Flaherty v. Dayton Elec. Mfg. Co.,* 109 F.R.D. 617 (D.Mass. 1986). *Cf. Yannitelli v. Navieras de Puerto Rico,* 106 F.R.D. 42 (S.D.N.Y.1985).

**12.** *Cf. United States v. International Business Machines Corp.,* 20 F.R.Serv.2d 1082 (S.D.N.Y. 1975).

Federal Rule 16, prior to the 1983 amendment, federal courts frequently enforced the rule by other appropriate measures. *Id.* ¶ 16.01[12], at 16–17. Therefore, when subdivision (f) was added to Federal Rule 16, it provided additional authority for the then existing enforcement practices. *Id.* ¶ 16.22, at 16–98.

Prior to the addition of subdivision (f) to Rule 16, some federal courts imposed the sanction of dismissal for noncompliance with a pretrial order under Rule 41(b) of the Federal Rules of Civil Procedure, which provides for an involuntary dismissal upon "failure of the plaintiff to prosecute or comply with [the] Rules or *any order of [the] court.*" Fed.R.Civ.P. 41(b) (emphasis added).[13] *See* 3 J. Moore, *Moore's Federal Practice* ¶ 16.22, at 16–98 (2d ed. 1988). Other courts relied upon their "inherent authority" or "discretion" to impose sanctions for noncompliance with Rule 16.[14] *Id.*

One case is particularly instructive. In that case, a federal district court imposed sanctions under Rule 16 in a situation analogous to the one before us. *In re Sanction of Baker,* 744 F.2d 1438 (10th Cir.1984), *cert. denied,* 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). Apparently, four days prior to trial, the third-party defendant moved for a continuance because a critical witness had not been deposed. The deposition had not taken place because the parties had failed to agree on a mutually acceptable time. Counsel for the plaintiff admitted to being partly responsible for the third-party defendant's inabili-

ty to take the deposition. The trial court granted the continuance but imposed a fine on *both* attorneys. The trial court made no finding of "willfulness" or "bad faith", but expressed its concern about the "delays caused by negligent counsel [which] burden the taxpayers and the court system." *Id.* at 1440.

The Tenth Circuit Court of Appeals, in affirming the trial court's decision, stated that "[w]hile the sanctions imposed in this case occurred shortly before the adoption of the 1983 amendments to Rule 16, the spirit and purpose of those amendments have *always* been within the *inherent power* of the courts to manage their affairs as an independent constitutional branch of government." *Id.* at 1441 (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–67, 100 S.Ct. 2455, 2463–65, 65 L.Ed.2d 488 (1980); *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)) (emphasis added). The court stated that: "The primary purpose of sanctions in this context [Rule 16] is to insure reasonable management requirements for case preparation. The secondary purpose is to compensate opposing parties for inconvenience and expense incurred because of any noncompliance with the reasonable management orders of the court." *In re Sanction of Baker,* 744 F.2d at 1441. The court concluded that the imposition of sanctions, in the form of a fine, was the trial court's "duty" and "within the spirit of its total powers, including Rule 16."

The *Baker* case exemplifies the universal principle that a court has "inherent authori-

---

**13.** *Von Poppenheim v. Portland Boxing & Wrestling Comm'n,* 442 F.2d 1047 (9th Cir.1971), *cert. denied,* 404 U.S. 1039, 92 S.Ct. 715, 30 L.Ed.2d 731 (1972). *Cf. Silas v. Sears, Roebuck & Co.,* 586 F.2d 382 (5th Cir.1978); *Carter v. City of Memphis,* 636 F.2d 159 (6th Cir.1980) (court of appeals reversed dismissal of a district court under Fed.R.Civ.P. 41(b) for failure to comply with a pretrial order, holding that dismissal should only be ordered in extreme situations showing contumacious behavior by plaintiff); *Societe Internationale Pour Participations Industrielles Et Commerciales v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (Supreme Court noted a due process limitation on district court's power to dismiss a case based on petitioner's noncompliance with a pretrial pro-

duction order absent a hearing and a finding of willfulness or bad faith).

**14.** *Link v. Wabash Ry,* 370 U.S. 626, 630, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962) (Supreme Court upheld district court *sua sponte* dismissal of case for plaintiff's counsel failure to appear at pretrial conference, as being within the court's "inherent power."); *Admiral Theatre Corp. v. Douglas Theatre Co.,* 585 F.2d 877, 897 (8th Cir.1978) (exclusion of exhibits and testimony of witnesses not listed prior to trial, in contravention of pretrial order, held to be within the court's discretion.)

ty" to compel compliance with its own orders. It also illustrates the weight of authority in support of the proposition that noncompliance with a court order, justifying sanctions can involve negligence, without a finding of "willfulness" or "bad faith." *Tamari v. Bache & Co.*, 729 F.2d 469, 473–74 (7th Cir.1984).

### Delaware Rule 16

Superior Court Civil Rule 16 provides in pertinent part:

(a) Pretrial Conference.

(1) In any action, the Court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider:

    a. The simplification of the issues;

    b. The necessity or desirability of amendments to the pleadings;

    c. The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;

    d. The limitation of the number of expert witnesses;

    e. The advisability of a preliminary reference of issues to a Master for findings to be used as evidence when the trial is to be by jury;

    f. Such other matters as may be in the disposition of the action.

(2) The Court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and *such order when entered controls the subsequent course of the action,* unless modified at the trial to prevent manifest injustice.

Super.Ct.Civ.R. 16 (Supp.1988) (emphasis added).

Unlike its federal counterpart, the part of Delaware's Superior Court Civil Rule 16 governing pretrial procedure has not been amended since 1983.[15] Therefore, it does not contain an explicit provision for sanctions against a party or the party's attorney for failure to obey or abide by a pretrial order.[16] This is the same anomaly that existed in the federal rule prior to the 1983 amendments.

■ However, the Delaware Superior Court has "inherent power" to enforce its own orders which are issued pursuant to valid authority. *See In re Sanction of Baker*, 744 F.2d at 1441. Therefore, even though the Delaware Superior Court Civil Rules do not contain the explicit parallel sanctions provision that is now provided for in the 1983 amendments to Federal Rule Civil Procedure 16, "the spirit and purpose of those amendments have always been within the inherent power" of the Superior Court. *Id.*[17] Accordingly, we hold that the Superior Court has inherent authority to impose sanctions for the violation of orders which it enters pursuant to Superior Court Civil Rule 16. *Gebhart v. Ernest DiSabatino & Sons, Inc.*, Del.Supr., 264 A.2d 157, 159–60 (1970).

---

**15.** A new paragraph providing for compulsory arbitration was added to Superior Court Civil Rule 16 in 1984. See Super.Ct.Civ.R. 16(c) (Supp.1988). Subsequent amendments to paragraph (c) were made in 1986 and 1988. The addition to the Rule and its amendments, however, do not change or amend in any way the rules governing pretrial procedure which are provided for in paragraph (a) of the Rule and which are the subject of this opinion.

**16.** Superior Court Civil Rule 16 contains an interim sanctions provision addressing the failure of a party or attorney to participate in the pretrial order or pretrial conference:

[Interim amendment of rule for New Castle County]

(b) In any action for personal injuries, no pretrial conference or trial date shall be provided unless the following conditions have occurred:

    ....

(7) Failure of a party or attorney to participate fully in the preparation of the proposed pretrial order, to complete it or to cause, directly or indirectly, delay in its being prepared or to appear unprepared for the pretrial conference is cause for the Court to enter with respect to such conduct, such order as it deems appropriate....

Super.Ct.Civ.R. 16(b)(7) (Supp.1988) (effective July 1, 1982).

**17.** "In 1948, one of the first reported cases which interpreted the newly adopted Delaware Superior Court Civil Rules was written by Judge, later Justice, Carey. Justice Carey, who had joined in promulgating those rules only a few months earlier, wrote:

### Rule 16 in This Case

██ In this case, the Superior Court entered a pretrial order, pursuant to Rule 16, which was based upon a pretrial stipulation. The pretrial order stated that the "parties shall have an opportunity to depose all experts." The Superior Court relied upon that language in the pretrial stipulation and order when it granted Upjohn's motion to compel the deposition of the Cebenkas' expert witness.

At the hearing on Upjohn's motion to compel, the Superior Court concluded that the Cebenkas' expert witness would appear for a deposition, if his fees were paid. Therefore, in its discretion, the Superior Court declined to require the formal procedure of a commission and a subpoena to compel the attendance of a nonresident expert at his deposition.

In the context of the Superior Court's decision to compel the attendance of the Cebenkas' expert witness without a subpoena, the Delaware attorney for Upjohn requested adequate notice in the event that a problem developed. Uffelman, as the Cebenkas' attorney, not only agreed to provide Upjohn with adequate notice of a problem, but represented to the Superior Court that a provision for such notice need not be included in its order compelling the expert's deposition without a subpoena.

There is no dispute about the fact that the Cebenkas' expert failed to appear for deposition on April 27, 1988. The Superior Court found, as a fact, that Uffelman had failed to notify Upjohn's attorney of the continuing problems with Abramson's appearance, in a timely manner. The Superior Court held that the failure of the Cebenkas and their attorney, Uffelman, to produce their expert, Abramson, on the date set for his deposition and their failure to provide adequate notice to Upjohn that there were problems with his appearance, violated the pretrial order, which was issued pursuant to Superior Court Civil Rule 16.

We have held here that the Superior Court has the inherent authority to impose sanctions for violation of orders which it enters pursuant to Rule 16. *Ante*, at 1225. Orders imposing sanctions are subject to appellate review according to an abuse of discretion standard. *Bader v. Fisher*, Del. Supr., 504 A.2d 1091, 1095 (1986); *Holt v. Holt*, Del.Supr., 472 A.2d 820, 824 (1984); *Rittenhouse Assoc. v. Frederic A. Potts & Co.*, Del.Supr., 382 A.2d 235, 236 (1977). In this case, the sanction which was imposed against Uffelman and the Cebenkas was the direction to pay Upjohn a portion of its counsel fees and costs.

Uffelman and the Cebenkas argue that the imposition of sanctions in this case was unwarranted in the absence of willful conduct on their part. However, this Court has previously held that negligence alone can justify the imposition of sanctions in the form of counsel fees and costs. *See Wileman v. Signal Finance Corp.*, Del. Supr., 385 A.2d 689, 691 (1978) (reversal and remand for an award of attorney's fees because of failure to comply with a Rule 37(a) order, despite no finding of willfulness); *Rittenhouse Assoc., Inc. v. Frederic A. Potts & Co.*, Del.Supr., 382 A.2d 235 (1977) (reversal of a sanction of dismissal for failure to comply with discovery absent finding of willfulness; however, remand included direction to award counsel fees and costs). *Cf. Sundor Electric, Inc. v. E.J.T. Construction Co.*, Del.Supr., 337 A.2d 651 (1975) (default judgment as a sanction is an extreme remedy and requires some element of willfulness); *accord, Holt v. Holt*, Del.Supr., 472 A.2d 820 (1984);

---

In those instances where our present rule is exactly the same as the Federal rule, it is desirable to follow the interpretation placed upon it by the Federal Courts, especially where those Courts have been so nearly unanimous in their rulings, unless some good reason appears for adopting a contrary construction.
*Patterson v. Vincent*, Del.Super., 61 A.2d 416, 417 (1948). This Court has also held that

because the 1948 Superior Court Civil Rules are basically the 1938 Federal Rules of Civil Procedure, the construction of these latter rules by the federal judiciary is of "great persuasive weight in the construction of the present Superior Court Rules." *Canaday v. Superior Court*, Del.Supr., 119 A.2d 347, 352 (1956).
*Hoffman v. Cohen*, Del.Supr., 538 A.2d 1096, 1097–98 (1988).

In this case, the Cebenkas' fee dispute with Abramson was unfortunate and continued over a period of years. The Cebenkas and their attorney were both responsible for resolving the fee dispute with their own expert witness. The Cebenkas and their attorney had more than adequate time to resolve the underlying problem which caused their inability to produce Abramson for his deposition, on the date set by the Superior Court's order granting Upjohn's motion to compel his appearance.[18] The sanctions imposed in this case compensated Upjohn for a portion of the expenses it incurred due to noncompliance by the Cebenkas and Uffelman with a reasonable pretrial order of the Superior Court. We find no abuse of discretion.

### Conclusion

The decision of the Superior Court which resulted in the imposition of sanctions against the Cebenkas and Uffelman, is AFFIRMED.

18. This is evidenced by the fact that the experts outstanding fee was satisfied the day following the day scheduled for deposition.