# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FORTIS ADVISORS, LLC,    )
    )
    Plaintiff,    )
    )
    v.    )    C.A. No. N18C-12-104 AML CCLD
    )
DEMATIC CORP.,    )
    )
    Defendant.    )

**Submitted: June 1, 2021**
**Decided: June 3, 2021**

**Defendant's Application for Certification of Interlocutory Appeal- DENIED**
**Defendant's Motion to Stay Proceedings Pending Appeal- DENIED**

## ORDER

## FACTUAL & PROCEDURAL BACKGROUND

1.    Fortis Advisors, LLC ("Fortis") is the seller representative in the merger between Reddwerks Corporation and Dematic Corporation ("Dematic"). On December 11, 2018, Fortis filed a complaint alleging Dematic breached the parties' merger agreement (the "Merger Agreement") by (i) failing to utilize Dematic engineers to integrate Reddwerks products into Dematic software, and (ii) failing to pay Fortis the post-closing consideration specified in the Merger Agreement (the "Earn-Out Consideration").[1] Deadlines in this case have been delayed several times

---

[1] The Earn-Out Consideration has two components: an order credit ("Order Intake Credit") and an EBITDA calculation ("Earn-Out Period EBIDTA").

1

at the parties' request, and the Court rescheduled trial at least once. Trial now is set to begin in four days.

2. From the outset of this case, Fortis focused its discovery efforts on determining how Dematic integrated Reddwerks products, including its source code, into Dematic's software, since the Earn-Out Consideration directly was tied to the sale of such products and the revenue generated thereby. Dematic produced little in the way of responsive material, but nevertheless represented it had produced all documents relating to (a) Dematic's contention that it met its contractual integration obligations,[2] and (b) the extent to which Reddwerks' source code was integrated into Dematic products.[3]

3. The Court considered several discovery motions Fortis filed seeking additional information. On October 17, 2019, the Court ordered Dematic to supplement its discovery responses in several respects.[4] On May 23, 2020, Dematic stipulated to entry of an order resolving Fortis's then-pending motion to compel and motion for sanctions.[5] In that stipulated order, Dematic agreed to provide additional discovery, including detailed information regarding Dematic's integration efforts and sales of integrated products. But those orders did not resolve the discovery

---

[2] Pl.'s 3d Mot. for Sanctions, App. 61.
[3] *Id.*, App. 23, 25, 34, 101, 192, 201.
[4] D.I. 42.
[5] D.I. 75.

dispute, in part because Dematic continued to limit its production of documents to the narrow set of contracts that Dematic conceded involved the sale of Reddwerks' code, rather than a broader set of contracts and documents that would allow Fortis to explore whether Dematic created and sold other products incorporating Reddwerks' code.[6] In November 2020, the Court granted in part Fortis's supplemental motion for sanctions, ordering Dematic to (i) produce the contracts and "as-installed records" for all contracts in effect during the Earn-Out Period that involved the sale of products with the same functionality as Reddwerks' products, and (ii) pay attorneys' fees associated with the motion. At that time, the Court denied without prejudice Fortis's request for an adverse inference instruction, concluding the prejudice Fortis suffered as a result of the delayed production could be remedied with less severe sanctions.

4.      On March 16, 2021, Fortis deposed Dematic's Senior Director, Andrew Gill, about Dematic's efforts to integrate Reddwerks products into Dematic's software. Mr. Gill's testimony revealed Dematic utilized throughout the Earn-Out Period a project management software called Confluence, a task management software called Jira, and source code that together could show the extent to which Dematic engineers worked to integrate Reddwerks products and what Reddwerks products, if any, ultimately were incorporated into various versions of Dematic

---

[6] 11/18/20 Letter Op., D.I. 97, at 10-12.

software. Although Dematic contended these materials were well known to the Reddwerks executives that Fortis represents, Fortis maintained it learned of these materials for the first time at Mr. Gill's deposition.

5.      On April 21, 2021, Fortis filed its Third Motion for Sanctions,[7] arguing the Confluence records, the Jira records, and the source code should have been produced during discovery two years ago. Fortis argued Dematic's failure to produce these materials was willful and done in bad faith.[8] Dematic filed its response on April 30, 2021, asserting it acted in good faith in attempting to meet its discovery obligations and arguing Fortis was not prejudiced because the records sought had no bearing on the case.[9] Fortis replied on May 4, 2021, and the Court took the Motion under advisement after argument on May 7, 2021. At a teleconference on May 10, 2021, the Court issued its oral ruling granting the Motion in part and entered a written order ("the Order") the next day. The Order precluded Dematic from relying on the Confluence records, Jira records, and the source code at trial and required Dematic to bear the fees Fortis incurred litigating the Motion.[10] The Order also imposed the following evidentiary presumptions at trial:

---

[7] Fortis prepared its sanctions motion shortly after Gill's deposition but agreed not to file the motion while the parties mediated their disputes. That mediation proved unsuccessful.

[8] Pl.'s 3d Mot. for Sanctions at 24-26; 33-35.

[9] Def.'s Resp. at 3-9

[10] Order on Pl.'s 3d Mot. for Sanctions, C.A. No. N18C-12-104 (May 11, 2021).

(1) If the Court adopts Plaintiff's interpretation of the term "Company Product,"[11] it is presumed that the Order Intake Amount achieved by Reddwerks Dematic and/or Dematic during the Earn-Out Period was greater than or equal to $48 million.

(2) If the Court adopts Plaintiff's interpretation of the term "Company Product," it is presumed that the Earn-Out Period EBIDTA for Reddwerks Dematic was greater than or equal to $9.3 million.[12]

On May 19, 2021, Dematic filed an Application for Certification of Interlocutory Appeal (the "Application") and a simultaneous Motion to Stay Proceedings Pending Appeal of the Order. Curiously, Dematic did not seek an expedited briefing schedule, although Rule 42 allows this Court to order one. Fortis filed its opposition to the Application on June 1, 2021. This is the Court's ruling.

## ANALYSIS

### A. Dematic's Application for Certification of Interlocutory Appeal

6. Delaware Supreme Court Rule 42(b) establishes the standard for certifying an interlocutory appeal. "No interlocutory appeal will be certified by the trial court or accepted by this Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[13] A "substantial issue of material importance" is one that goes to the

---

[11] The parties dispute the meaning of "Company Product" in the Merger Agreement and disagree as to whether it includes Reddwerks source code integrated into Dematic software. This "condition precedent" to the presumptions thereby maintains Dematic's ability to litigate this threshold issue.
[12] Order on Pl.'s 3d Mot. for Sanctions, C.A. No. N18C-12-104 (May 11, 2021).
[13] Del. Supr. Ct. R. 42(b)(i).

merits of the case.[14]  In deciding whether to certify an interlocutory appeal, the trial

court must consider: (i) the eight factors listed in Rule 42(b)(iii);[15] (ii) the most

efficient and just schedule to resolve the case; and (iii) whether and why the benefits

of interlocutory review outweigh the probable costs, such that interlocutory review

is in the interests of justice.[16]  "If the balance [of these considerations] is uncertain,

the trial court should refuse to certify the interlocutory appeal."[17]

7.     In Dematic's view, the Order presents two substantial issues of material

importance:

> (1) Defendant has not engaged in destruction of evidence . . .
> [n]evertheless, the Court's Order bases its sanction on the premise that
> Defendant's conduct is equivalent to 'intentional or reckless destruction
> of evidence.'  Defendant respectfully submits that this broadening of

---

[14] Del. Supr. Ct. R. 42(b)(i).

[15] Del. Supr. Ct. R. 42(b)(iii) provides that the trial court should consider whether;

(A) The interlocutory order involves a question of law resolved for the first time in this State;

(B) The decisions of the trial courts are conflicting upon the question of law;

(C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order;

(D) The interlocutory order has sustained the controverted jurisdiction of the trial court;

(E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice;

(F) The interlocutory order has vacated or opened a judgment of the trial court;

(G) Review of the interlocutory order may terminate the litigation; or

(H) Review of the interlocutory order may serve considerations of justice.  See Del. Supr. Ct. R. 42(b)(iii).

[16] Del. Supr. Ct. R. 42(b)(iii).

[17] *Id*.

the definition of 'destruction of evidence' is a substantial question of law appropriate for appellate review.

(2) The Order imposes sanctions . . . that would nullify a material term of the Merger Agreement. The Order would replace the Review Firm dispute resolution process for resolving disputes over these calculations . . . with the Court's shifted presumptions. Defendant respectfully submits that the question of whether a sanctions order may eliminate bargained-for dispute resolution under a merger agreement is a substantial question of law appropriate for appellate review.[18]

8. Appellate review is not warranted at this time because the Order was not a decision addressing the case's merits. Generally, matters of discovery do not relate to the merits of a case.[19] Adherence to this rule is essential to limiting appeals and avoiding fragmentation of cases.[20] There may be narrow instances where interlocutory appeal of a discovery matter is appropriate because legal rights, such as privilege or self-incrimination, are involved.[21] But this is not one of those rare cases. The Order addresses Dematic's discovery abuses and their consequences at trial, not the merits of the parties' contractual dispute.

9. Dematic's argument that the Order nonetheless decided issues of material importance is unconvincing. Dematic asserts the Court impermissibly imposed evidentiary presumptions absent a finding of reckless or intentional destruction of evidence. First, the "reckless or intentional destruction" standard

---

[18] Def.'s Appl. at 2.
[19] *Lummus Company v. Air Products and Chemicals, Inc.*, 243 A.2d 718, 719 (Del. 1968).
[20] *Castaldo v. Pittsburgh-Des Moines Steel Co., Inc.*, 301 A.2d 87, 87-88 (Del. 1973) (citing *Lummus Company*, 243 A.2d at 719).
[21] *Pepsico, Inc. v. Pepsi-Cola Bottling Co. of Asbury Park*, 261 A.2d 520, 521 (Del. 1969).

7

applies when the Court imposes adverse inferences, *not* evidentiary presumptions.[22]

Second, Dematic's failure to produce was intentional, as the Court explained in its oral ruling granting sanctions. Third, Dematic incorrectly assumes that "destruction" of evidence fundamentally is different from a failure to produce evidence until the eve of trial. As this Court explained in its bench ruling on May 10, 2021, there is no practical difference between destroying evidence and intentionally refusing to produce it until the eve of trial. In both instances, the non-producing party cannot effectively use that evidence to present its case. This particularly is true where, as here, the non-producing party bears the burden of proof on the issue to which the discovery relates. Under those circumstances, shifting the parties' burdens and imposing evidentiary presumptions is appropriate and is not a "substantial issue" marking a departure from settled Delaware law.[23]

10. Further, contrary to Dematic's contentions, the Order does not nullify the parties' bargained-for Review Firm process. To the extent Dematic is arguing this Court lacks jurisdiction because Fortis's claims must be addressed through the

---

[22] *Sears, Roebuck & Co. v. Midcap*, 893 A.2d 542, 552 (Del.2006).

[23] *Holt v. Holt*, 472 A.2d 820, 824 (Del. 1984) (emphasizing a trial court's obligation to diligently sanction discovery abuses); *Terramr Retail Centers, LLC v. Marion #2-Seaport Trust U/A/D June 21, 2002*, 2018 WL 6331622, at *11 (Del Ch. Dec. 4, 2018) (describing evidentiary presumptions as a moderate sanction for the late production of evidence) (citing *James v. Nat'l Fin. LLC*, 2014 WL 6845560, at *9 (Del. Ch. Dec. 5, 2014)); *M & G Polymers USA, LLC v. Carestream Health, Inc.*, 2010 WL 1611042, at *56-60 (Del. Super. April 21, 2010) (imposing sanctions where the party withheld non-privileged relevant information until mid-trial because, irrespective of the withholding party's intent, the moving party was severely prejudiced).

Review Firm process, that defense may be raised at trial or in post-trial briefing. Nothing in the Court's order eliminates this argument or any other affirmative defense or counterclaim Dematic asserts. Fortis conceded that point in its briefing regarding the Motion.[24] Finally, the delay and costs associated with an interlocutory appeal will be substantial and disruptive to this case, which is set to go to trial in four days.

11. In addition, consideration of the factors set forth in Rule 42(b)(iii) weigh against certification:

(A) The Order does not involve a question of law resolved for the first time in this State.[25]

(B) There are no conflicting trial court opinions about the questions of law addressed by the Order.[26]

(C) The questions of law addressed by the Order do not relate to the constitutionality of a statute of this State.[27]

(D) The Order did not sustain the controverted jurisdiction of the Court.[28] The parties submitted to the Court's jurisdiction as a provision of the Merger Agreement. Again, to the extent Dematic is arguing the Court

---

[24] Pl.'s Reply Br. in Supp. of 3d Mot. for Sanctions at 8-9.
[25] Del. Supr. Ct. R. 42(b)(iii)(A). *See* ¶ 9, *supra*.
[26] Del. Supr. Ct. R. 42(b)(iii)(B).
[27] Del. Supr. Ct. R. 42(b)(iii)(C).
[28] Del. Supr. Ct. R. 42(b)(iii)(D).

lacks jurisdiction to adjudicate disputes regarding the Earn-Out Consideration due to the Review Firm provision, the Order does not prevent Dematic from raising that argument.

(E)  The Order did not set aside a prior decision of a trial court, jury, or administrative agency.[29]

(F)  The Order does not vacate or open a prior judgment of the trial court.[30]

(G)  Review of the Order by the Delaware Supreme Court will not terminate the litigation.[31]  Rather, interlocutory review would further complicate this litigation, delaying trial just days before it is set to begin.

(H)  This Court does not find that the likely benefits of interlocutory review will outweigh the probable costs.[32]

12.  Upon consideration of the criteria set forth in Rule 42, this Court finds there are no exceptional circumstances warranting interlocutory review.[33]  Review of the Order will not terminate the litigation, substantially reduce further litigation, or otherwise serve the interests of justice.[34]  To the contrary, interlocutory appeal of the Order would materially increase the costs and burden of litigation.  As mentioned

---

[29] Del. Supr. Ct. R. 42(b)(iii)(E).
[30] Del. Supr. Ct. R. 42(b)(iii)(F).
[31] Del. Supr. Ct. R. 42(b)(iii)(G).
[32] Del. Supr. Ct. R. 42(b)(iii)(H).
[33] Del. Supr. Ct. R. 42(b)(ii).  *See also Harrison v. Div. of Youth & Fam. Servs.*, 2003 WL 22669344, at *1 (Del. Nov. 10, 2003) ("Applications for interlocutory review are addressed to the sound discretion of this Court and are granted only in extraordinary cases.").
[34] Del. Supr. Ct. R. 42(b)(iii)(E).

above, this case has been delayed numerous times and it is now the eve of trial. Interlocutory review would reward Dematic's continued strategic efforts to delay trial due to its own discovery failures.[35]

**B. Dematic's Motion to Stay Proceedings Pending Appeal**

13.    A motion to stay pending appeal is within the sound discretion of the Court.[36]  In considering a stay application, the reviewing court applies a four-prong analysis that assesses whether: (i) the applicant makes a strong showing that it is likely to succeed on the merits of the appeal; (ii) the applicant establishes that it will suffer irreparable injury if the stay is not granted; (iii) no substantial harm will come to the other interested parties as a result of the stay; and (iv) a stay will do no harm to the public interest.[37]  These factors should be viewed as a whole and the reviewing court should avoid overemphasizing the "likelihood of success on appeal" component.[38]  "[I]f the other factors strongly favor interim relief, then a court may

---

[35] On this point, the Court notes that Dematic has moved to postpone trial on three other occasions in the last two months, not including the pending motion to stay while this interlocutory appeal is resolved.  *See* D.I. 145 at 15-18; D.I. 156 at 7; D.I. 176.  The Court has rejected each such request, concluding it would reward Dematic's discovery misconduct and delays while unfairly prejudicing Fortis's ability to timely litigate its claims.  These repetitive efforts to postpone trial, coupled with Dematic's decision not to seek expedited consideration of its Application, create the impression that the Application was filed for leverage or strategic reasons, rather than on its merits.

[36] *Walter Reade Organization, Inc., et al. v. Crane*, 332 A.2d 399 (Del. Super. 1975); *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g. Co.*, 263 A.2d 281, 283 (Del. Super. 1970).

[37] *Kirpat, Inc. v. Delaware Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 358 (Del. 1998) (citing *Evans v. Buchanan*, 435 F.Supp. 832, 841-42 (D.Del. 1977)).

[38] *Id*. at 358 (Del. 1998).

11

exercise its discretion to reach an equitable resolution by granting a stay if the petitioner has presented a serious legal question."[39]

14.     Those four factors do not support entry of a stay in this case. As to the first factor, any appeal of the Order will be reviewed for abuse of discretion.[40] Beyond disagreeing with the Court's reasoning, Dematic has not demonstrated any likelihood of success on the merits.[41] Rather, Dematic has not even shown that the Delaware Supreme Court is likely to accept an interlocutory appeal of the Order. With respect to the second and third factors, Dematic has not set forth any irreparable harm it will suffer if the case proceeds to trial before appeal of the Order. To the contrary, it is entirely possible the Delaware Supreme Court never will need to review the Order at all; if at trial this Court adopts Dematic's definition of "Company Products," the presumptions will be irrelevant. Likewise, if the Court agrees with Dematic's other affirmative defenses, the Order may become moot. Fortis, however, will suffer substantial harm and expense if the Court stays the case on the eve of trial. As to the fourth factor, it does not serve the public interest to stay a case this close to trial for an unwarranted interlocutory appeal.

---

[39] *Munir v. Delaware Examining Bd. of Physical Therapy*, 1999 WL 458800, at *1 (Del.Super. May 25, 1999).

[40] *In re Rinehardt*, 575 A.2d 1079, 1082 (Del. 1990); *see also Cebenka v. Upjohn Co.*, 559 A.2d 1219, 1226 (Del. Super. 1989); *Rittenhouse Assocs. v. Frederic A. Potts and Co.*, 382 A.2d 235, 236 (Del. Super. 1977).

[41] Dematic asserts in its Motion that the two issues in the Application "raise fair grounds for appellate review." Def.'s Mot. at 3. The Court explained in the preceding section why these two issues lack merit. *See supra* at 5-6.

## CONCLUSION

15.    Defendant's Application for Certification of Interlocutory Appeal and Motion to Stay Proceedings Pending Appeal are **DENIED.**  Upon further reflection and in light of the Court's ability to explain its reasoning here, the Court will not issue a separate decision explaining its sanctions order until after trial.

**IT IS SO ORDERED.**

*/s/ Abigail M. LeGrow*
Abigail M. LeGrow, Judge