# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| ITRON, INC., as successor-in-interest to SMARTSYNCH, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 7720-VCL |
| CONSERT INC., | ) ) | |
| Defendant. | ) | |

## OPINION

Date Submitted: January 14, 2015
Date Decided: January 15, 2015

Raymond J. DiCamillo; Kevin M. Gallagher, RICHARDS LAYTON & FINGER P.A., Wilmington, Delaware; Adam H. Offenhartz, Nancy Hart, Laura K. O'Boyle, Lindsey D. Schmit, GIBSON, DUNN & CRUTCHER, LLP, New York, New York; *Attorneys for Plaintiff Itron, Inc.*

Stephen C. Norman, T. Brad Davey, John A. Sensing, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Joel D. Bush, II, Stephen E. Hudson, Jason M. Wenker, KILPATRICK TOWNSEND & STOCKTON LLP, Atlanta, Georgia*; Attorneys for Defendant Consert Inc.*

**LASTER, Vice Chancellor.**

Plaintiff Itron, Inc. and defendant Consert, Inc. are parties to a Development Agreement dated April 25, 2012 (the "Development Agreement"). Consert claims Itron owes it approximately $60 million under the Development Agreement. Itron seeks a declaration that it does not owe Consert anything. To the extent the Development Agreement calls for a payment, Consert seeks reformation to eliminate it.

A five-day trial is approaching. On December 11, 2014, pursuant to an agreed-upon schedule, the parties filed a Joint Pretrial Stipulation and [Proposed] Order (the "Proposed Order"). It identified fifteen facts as admitted and not requiring proof at trial ("Admitted Facts").

Itron believes that Consert should have agreed to additional Admitted Facts, including (i) facts Consert admitted in its answer, (ii) facts Consert admitted in response to requests for admissions, and (iii) facts drawn from Consert's sworn interrogatory responses. Itron also believes that Consert did not engage in good faith negotiations over additional Admitted Facts. Itron has moved to have the court declare that certain facts are Admitted Facts and to require Consert to meet and confer in good faith about additional Admitted Facts. The motion is granted.

## I.  FACTUAL BACKGROUND

The record in this case is large. Discovery lasted approximately two years. The parties exchanged over 55,000 pages of documents, responded to more than 300 interrogatories and requests for admission, and deposed twenty-eight fact witnesses and four expert witnesses. Each side will have fifteen hours of trial time. To present this

matter efficiently and effectively requires that counsel cooperate as officers of the court and not waste time on issues not legitimately in dispute.

On November 21, 2014, Itron provided Consert with an initial draft of the Proposed Order that included one hundred sixty-four Admitted Facts. Itron anticipated that Consert would strike some of the proposed Admitted Facts, edit others, and add Admitted Facts of its own. Instead, when Consert returned a redlined draft of the Proposed Order on December 4, 2014, Consert had deleted, entirely or in substantial part, approximately 90% of the proposed Admitted Facts, including many facts that Consert had admitted in its answer and responses to requests for admission, or which came from Consert's verified interrogatory responses. Consert struck even benign and undisputed facts such as the dates on which drafts of documents were exchanged.

Itron invited Consert to meet and confer about the proposed Admitted Facts, and the parties held three sessions supplemented by written correspondence. During the sessions, Consert explained that it had deleted many of the proposed Admitted Facts not because they were disputed, but rather because Consert regarded them as irrelevant, or because Consert believed that other facts or evidence should be presented along with the proposed Admitted Facts. Despite striking many of Itron's proposed Admitted Facts as purportedly irrelevant, Consert addressed the same or similar issues in its statement of the case or in proposed Admitted Facts of its own.

On December 11, 2014, Itron provided Consert with a revised draft of the Proposed Order that removed more than seventy of the Admitted Facts that Itron originally proposed. Rather than responding to this constructive effort, Consert refused to

engage in any discussions. Consert identified just sixteen rudimentary background facts to which it would agree, claiming an "advocacy interest" in forcing everything else to be addressed at trial.

Itron filed the Proposed Order. Then Itron filed its motion.

## II.     LEGAL ANALYSIS

"Rule 16 governs pretrial procedure and management . . . . [and] provides authority for the pretrial conference. The pretrial conference and order [are] designed to familiarize the litigants with the issues in the case[,] reduce surprises at trial[,] and facilitate the overall litigation process." *Cebenka v. Upjohn Co.*, 559 A.2d 1219, 1222 (Del. 1989). Rule 16 provides, in pertinent part, as follows:

> (b) In any action that is to be tried, unless the Court otherwise directs, a pretrial conference shall be held . . . . [B]efore the pretrial conference, counsel shall submit to the Court . . . a pretrial order which shall meet the requirements of paragraph (c) of this Rule. *Counsel shall confer in good faith effort to stipulate to the contents of the pretrial order.* To the extent that counsel are unable to agree upon the contents of the pretrial order, each attorney (or party not represented by an attorney) shall submit to the Court a proposed pretrial order that shall indicate the areas of disagreement.
>
> (c) Except to the extent that the Court orders otherwise, all pretrial orders shall include the following information:
>
> . . .
>
>        (2) A statement of the facts which are admitted and required[1] no proof.

---

[1] Rule 16 indeed uses "required" in the past tense. This strikes me as a typographical or editorial error, likely triggered by the verb's proximity to the past participle "admitted." In the rule, "admitted" is used as an adjective to describe the present state of the facts. Facts which "are admitted" (present tense) "require no proof" at trial (present tense). Or because the trial will happen in the future, the rule might say that

3

Ch. Ct. R. 16 (emphasis and footnote added).

Consert correctly observes that the court cannot order Consert to stipulate to facts that are not actually "admitted and required no proof." *Id.* "[A] stipulation is voluntary."[2] "On its face, Rule 16 . . . does not authorize a court to force parties to stipulate facts to which they will not voluntarily agree." *J.F. Edwards Const. Co. v. Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318, 1322 (7th Cir. 1976). Parties may decide to stipulate to facts that are not otherwise admitted or beyond dispute, or they may concede otherwise contested legal issues such as liability, but those are matters of legal strategy for the parties.

> [T]he court is not to substitute its judgment for the parties on strategy . . . . [A]lthough the court has the power to request the parties to consider whether to stipulate as to the undisputed facts, it cannot order them to stipulate as to certain facts. That decision should be within the parties' control.

6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 1525.1 (2008). Because a stipulation is voluntary, the concept of a compelled stipulation is inherently contradictory.

---

facts which "are admitted" (present tense) "will require no proof" at trial (future tense). What does not make sense, at least to me, is "required." But to conform to the rule, this decision maintains that usage.

[2] *Tequila Centinela, S.A. v. Bacardi & Co., Ltd.*, 242 F.R.D. 1, 4 (D.D.C. 2007) (internal quotation marks omitted). The *Tequila* case interpreted Rule 16 of the Federal Rules of Civil Procedure. "Decisions interpreting the Federal Rules of Civil Procedure are usually of great persuasive weight in the construction of parallel Delaware rules." *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1191 n.11 (Del. 1988). In addition to the *Tequila* case, this decision relies on other authorities interpreting the federal version of Rule 16.

What a court can do is determine that particular facts have been admitted or are otherwise beyond legitimate dispute. A court can base such a determination on the discovery record or on statements made by counsel during the pretrial conference.

> The pretrial conference should not be viewed as merely an informal meeting at which those involved can act without concern for future consequences. If the conference is to be a useful tool, all participants must be fully aware of the possible effects the pretrial hearing may have on the trial. When the final conference is held after the discovery process is completed, shortly before trial, counsel presumably have identified virtually all of the evidence relating to their cases. Thus, it would not be unreasonable to hold them to the statements they make and the agreements they enter into at the conference or restrict their proof at trial to the issues set forth in the pretrial order.

*Id.* § 1527. "Courts generally hold stipulations, agreements, or statements of counsel made at the pretrial conference binding for purposes of the trial." *Id.* (citations omitted). "[A] court also may relieve counsel from any statement or stipulation made during a conference in order to prevent injustice." *Id.*

There is nothing unique or unprecedented about the ability of a court to make a pretrial determination that a particular fact has been admitted or is not legitimately subject to dispute. Courts make such determinations when evaluating whether "there is no genuine issue" as to a particular fact for purposes of summary judgment. *See* Ch. Ct. R. 56(c). In addressing a motion for summary judgment, the court

> shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy . . . . Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

5

Ch. Ct. R. 56(d). A court similarly can adjudicate Admitted Facts for purposes of the pretrial order.[3] Rule 16 contemplates this type of determination by noting that if the parties cannot agree on the contents of a section of the pretrial order, "each attorney (or party not represented by an attorney) shall submit to the Court a proposed pretrial order that shall indicate the areas of disagreement." Ch. Ct. R. 16(b). The submission of competing forms of orders anticipates a determination by the court.

---

[3] *See Fed. Deposit Ins. Corp. v. Glickman*, 450 F.2d 416, 419 (9th Cir. 1971) (explaining that federal version of Rule 16 should be utilized "with a view toward sifting the issues in order that the suit will go to trial only on questions involving honest disputes of fact or law"); *Lynch v. Call*, 261 F.2d 130, 132 (10th Cir. 1958) ("The salutary, indeed the desirable and efficacious, purpose of a pretrial conference is to sift the discovered and discoverable facts to determine the triable issues, both factual and legal, and to chart the course of the lawsuit accordingly."); *cf. Holcomb v. Aetna Life Ins. Co.,* 255 F.2d 577, 580 (10th Cir. 1958) ("A pre-trial conference is more than a mere conference at which the court seeks to eliminate groundless allegations or denials and the court has the power to compel the parties to agree to all facts concerning which there can be no real issue."), *cert. denied,* 358 U.S. 879 (1958); *Berger v. Brannan*, 172 F.2d 241, 243 (10th Cir. 1949) ("The spirit of a pre-trial procedure is not only to call the parties together and ask them to stipulate as to all matters concerning which there can be no dispute, but to compel them to stipulate . . . ."), *cert. denied*, 337 U.S. 941 (1949). The *Holcomb* and *Berger* rulings have been criticized for speaking in terms of "compel[ling] the parties to agree," which employs the oxymoronic concept of an involuntary stipulation. *See Colon v. Walgreens de San Patricio, Inc.*, 269 F.R.D. 165, 168-69 (D.P.R. 2010). I believe both cases are better understood as recognizing that a court has the power to hold that certain facts are admitted or cannot be controverted in good faith. Such an approach "furthers the Rule 16 policy of limiting the trial to those issues that are actually in dispute without impairing the basic rights of the litigants." Wright & Miller, *supra*, § 1527. The current federal version of Rule 16 confirms this power by stating that during the pretrial conference, the court may consider "obtaining admissions and stipulations about facts and documents" so as to avoid unnecessary proof. Fed. R. Civ. P. 16(c)(2)(C); *see* Wright & Miller, *supra*, § 1525 (explaining that enumeration of specific subjects in current federal rule confirmed pre-existing authority and was designed to encourage courts to address those subjects).

In this case, the court previously declined to grant the parties leave to move for summary judgment because their submissions had identified numerous disputes of fact. Dkt. 282. That ruling did not mean that every conceivable fact about the case was disputed. To the contrary, the existence of material disputes of fact means that the parties should focus their trial time *on those disputes of fact*, rather than wasting resources by refusing to recognize that other facts are admitted or not legitimately subject to dispute.

## A.     Admissions In The Answer

Itron has cited as Admitted Facts matters that Consert admitted in its answer. These matters constitute Admitted Facts, and Consert should not have objected to their inclusion in the Proposed Order.

"The final pleadings upon which the case is tried state the contentions of each party as to the facts, and by admitting or denying the opponent's pleading, they define the factual issues that are to be proved." Kenneth S. Baron, 2 *McCormick on Evid.* § 257 (7th ed.). "They are used as judicial and not as evidentiary admissions, and they are conclusive until withdrawn or amended." *Id.*; *see In re Foxmeyer Corp.*, 286 B.R. 546, 567-68 (Bankr. D. Del. 2002) (treating statements in pleadings as binding judicial admissions).

> When the term admission is used without any qualifying adjective, the customary meaning is an evidentiary admission, that is, words in oral or written form or conduct of a party or a representative offered in evidence against the party. Evidentiary admissions are to be distinguished from judicial admissions. Judicial admissions are not evidence at all. Rather, they are formal concessions in the pleadings in the case or stipulations by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus, a judicial admission, unless allowed by the court to be withdrawn, is conclusive in the

7

case, whereas an evidentiary admission is not conclusive but is subject to contradiction or explanation.

2 *McCormick on Evid.* § 254 (footnotes omitted).

The following proposed Admitted Facts were based upon admissions in Consert's answer, so Consert's refusal to stipulate to these facts was not in good faith:

- "Smart meters (also referred to as advanced metering infrastructure or 'AMI') utilize a two-way communications module embedded in the meter and provide additional functionality beyond remote collection of meter data."

- "SmartSynch's smart meters utilized cellular networks to enable two-way communications."

- "In 2010, SmartSynch entered into preliminary discussions with Consert, regarding a potential venture between the companies. SmartSynch and Consert sought to explore options that would integrate SmartSynch's cellular solutions and Consert's energy management applications."

This decision finds that each of these statements is an Admitted Fact.

Other proposed Admitted Facts drew on admissions in Consert's answer to such a degree that Consert could not have acted in good faith by rejecting them in their entirety. To proceed in good faith, Consert had an obligation to accept the portion drawn from its answer and then confer with Itron about any disagreements over phrasing. This decision finds that each of the following statements is an Admitted Fact.

- "The comment 'We need to have some further discussions on this [Pricing]. I'm not clear on what the market will bear, and we probably need to discuss this F2F so I have a clear understanding of the pricing model and how it applies' first appeared in SmartSynch's initial revisions and comments to the first draft of the Contract, which was received by Consert from Gary Kessler."

- "Moore and Kessler then exchanged two additional drafts of the Contract, which contained further redlined changes, as well as

8

responses to many of Kessler's questions, comments and proposed revisions."

- "On or about June 29, 2012, Consert submitted an invoice to Itron in the amount of $3,000,000.00. The 'description' field on the Invoice states 'License fees per executed Development, Supply and Commercialization Agreement – 4-25-12 (Exhibit C – Pricing).' The invoice lists a 'due date' of July 14, 2012."

## B. Reponses To Requests For Admissions

Itron next cites as Admitted Facts matters that Consert admitted in its responses to requests for admissions served pursuant to Rule 36. These matters also constitute Admitted Facts to which Consert should not have objected.

An admission that results from a request served pursuant to Rule 36 "may be used by a party adverse to the party who made the admission as if it had appeared in a pleading." Wright & Miller, *supra*, § 2264. "Any matter admitted under this Rule is conclusively established unless the Court on motion permits withdrawal or amendment of the admission." Ch. Ct. R. 36(b).

> The salutary function of Rule 36 in limiting the proof would be defeated if the party were free to deny at the trial what he or she has admitted before trial . . . . A judicial admission, deliberately drafted by counsel for the express purpose of limiting and defining the facts in issue, is traditionally regarded as conclusive, and an admission under Rule 36 falls into this category.

Wright & Miller, *supra*, § 2264 (footnotes omitted).

The following proposed Admitted Facts were based upon statements in Consert's responses to requests for admissions:

- "SmartSynch and/or Itron have not submitted any Orders, as defined in the Development Agreement, to Consert."

9

- "Consert did not disclose to SmartSynch the existence of any dispute with Mr. Forbes prior to the execution of the Development Agreement."

Consert did not identify any grounds for withdrawing or amending its admissions. This decision finds that each of these statements is an Admitted Fact.

Other proposed Admitted Facts drew on statements in Consert's responses to the requests for admissions to such a degree that Consert could not have acted in good faith by rejecting them in their entirety. To proceed in good faith regarding these proposed Admitted Facts, Consert had an obligation to identify grounds for withdrawing or amending its admissions. Having not done so, Consert had an obligation to accept the portion drawn from the associated admission and then to confer with Itron about any difference in phrasing. This decision finds that each of the following statements is an Admitted Fact:

- "Development of the contemplated Solution has not been completed."

- "Consert has not delivered the Program, as defined in the Framework Agreement, to SmartSynch and/or Itron."

- "At the time Consert executed the Contract, Consert was aware of the existence of an employment dispute with Joseph Forbes in which Mr. Forbes asserted the existence of a contract dispute between himself and Consert as to the assignment of certain patent applications."

### C.      Statements In Interrogatory Responses

Itron also cites as Admitted Facts statements Consert made in verified responses to interrogatories served under Rule 33. Interrogatories are evidentiary and "may be used to the extent permitted by the rules of evidence." Ch. Ct. R. 33(c). "Although interrogatory

answers—like other discovery responses—may properly limit issues and foreclose avenues of proof, those consequences should only follow when appropriate." Wright & Miller, *supra*, § 2181.

> Answers to interrogatories, as adjuncts to the pleadings, do limit the issues and define the contentions of the parties, but under ordinary circumstances it is not their function to limit a party's proof in the way that pleadings do. So far as interrogatories require the production of information, parties must disclose whatever information they have as of the time of the demand by the interrogatories. However, the parties should not be bound by these answers, if in the interim between the time of the answers and the trial, they obtain by subsequent investigation new or additional facts. The parties will not be prevented from offering this further information on trial.

*McElroy v. United Air Lines, Inc.*, 21 F.R.D. 100, 102 (W.D. Mo. 1957).

Statements in interrogatory responses thus do not, by themselves, constitute Admitted Facts. But a statement in an interrogatory can be found to constitute an Admitted Fact if it is not legitimately subject to dispute. Interrogatory responses are supposed to be accurate. Like responses to requests for admission, they typically are prepared carefully by counsel. Parties verify them under oath. Ch. Ct. R. 33(b)(2). If a party later obtains new or additional information, then the party may have a duty to amend, supplement, or update the interrogatory response.

> A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which (A) the party knows that the response was incorrect when made, or (B) the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

11

Ch. Ct. R. 26(e)(2). A statement in an interrogatory response therefore carries considerable dignity and is something on which an opposing party and the court reasonably can rely.

When determining whether a statement in a party's sworn interrogatory response should be treated as an Admitted Fact for purposes of trial, the court may consider the clarity of the statement, the reasons given by the party for not being held to the statement, and any evidence the party indicates that it has or will introduce at trial to contradict the statement. The court also may consider factors such as the importance of the issue to the case, the narrowness or breadth of the statement, and any implications that an Admitted Fact would have for the burdens of proof or persuasion. *See Briggs v. Dalkon Shield Claimants Trust*, 174 F.R.D. 369, 373 (D. Md. 1997) (discussing similar factors). A sworn interrogatory response that clearly provided an item of historic information or a background fact about a party or the dispute can be treated more readily as an Admitted Fact than a hedged position about a contested issue. Often interrogatory responses include pertinent yet widely available background information which, if not for its case-specific nature, would resemble the type of knowledge suitable for judicial notice. *See* D.R.E. 201. A statement in a sworn interrogatory response providing information of this type may also be suitable for treatment as an Admitted Fact.

Consert identified proposed Admitted Facts based upon clear statements of case-specific historical fact drawn from Itron's verified interrogatory responses. To confer in good faith regarding these proposed Admitted Facts, Consert had an obligation to identify any good faith basis it might have to withdraw, modify, or otherwise dispute the relevant

part of its prior interrogatory responses. Absent grounds for doing so, Consert should have accepted the portion of the proposed Admitted Fact drawn from the associated interrogatory response and conferred with Itron about any disagreements over phrasing. This decision finds that each of the following statements is an Admitted Fact:

- "As of April 30, 2012, Consert's VPP had been deployed at 1,993 endpoints (i.e. residential or small customers of utilities)."

- "As of August 31, 2013, Consert's VPP had been deployed at 14,031 endpoints."

- "Over the ensuing months, the parties spoke via telephone and had several in-person meetings to discuss the potential venture."

- "Ravi Raju and Roy Moore spoke via telephone regarding the technical path to integration of Consert's software onto SmartSynch's hardware."

- "In or around September 2011, Consert entered into the License and Reseller Agreement for Hosted Application between Consert and General Electric Company (the 'GE Agreement')."

- "In 2012, Consert discussed 'white label' agreements with several companies that included minimum license commitments and prepayment obligations. These companies included ABB, Cooper, Landis+Gyr, Siemens and Verizon."

- "On January 26, 2012, SmartSynch and Consert representatives met during the DistribuTech conference."

- "On February 8, 2012, Mr. Kessler and Mr. Moore spoke by telephone and agreed to use the DOU as a starting point and make modifications to that document."

- "On February 16, 2012, Mr. Kessler sent Mr. Moore a draft Partnership Understanding between Consert and SmartSynch."

- "On 2/17/12 Gary Kessler and Roy Moore met in Grapevine, TX to discuss the partnership."

13

- "On February 23, 2012, Consert's Gini Coyle sent the first draft of the Development Agreement to SmartSynch's Gary Kessler."

- "At the time the instant litigation was filed, Consert had not delivered any software and/or support services to SmartSynch, Itron, or any Solution Customers."

- "The focus of the discussion on 3/12/12 was Kessler's concerns about ownership of intellectual property to be developed during the course of the Consert/SmartSynch partnership."

- "At the time that the Development Agreement was executed, Consert was committed to utilizing any and all of its intellectual property in development of a Proposed Solution in connection with the Development Agreement."

- "Roy Moore, Jack Roberts and Virginia Coyle learned of the Forbes dispute in October 2011. The Board of Directors was first apprised of the Forbes dispute in October 2011."

## D.    Other Facts

Itron's original draft of the Proposed Order identified a number of other facts which, if deemed admitted, would streamline the trial. Itron has established that Consert failed to meet and confer in good faith regarding Itron's proposals. Although Consert's counsel conferred on three occasions with Itron's counsel and exchanged written communications, Consert's counsel participated in the process with the mindset of an entrenched adversary, hostile to the prospect of agreement.

Consert has offered several justifications for its combative and closed-minded stance. First, Consert claims that Itron's proposed statements of fact were "written from Itron's advocacy perspective." Opp. at 2. A disinterested review does not support that characterization. To the extent some of the proposed statements could have been made more balanced, Consert should have proposed edits.

14

Second, Consert has argued that Itron took presented facts "out of context." *Id.* at 2. From Consert's perspective, this apparently means without the context of every piece of evidence that Consert might present at trial, together with Consert's explanation of the evidence. Of course context matters. But facts remain facts. If Consert sent a draft of a document to Itron by email on a particular date, and no one has any basis to disagree that the document was sent by email on that date, then that is a fact. The parties may argue about the implications of that fact. They may present evidence at trial to establish related facts. They may argue in their post-trial briefs and during post-trial argument about how the court should view that fact in the context of all of the evidence. But the sending of the document, the date on which it was sent, and the means by which it traveled are not subject to legitimate dispute.

Third, Consert claims that "some of the 'facts' are inadmissible (and the subject of a pending motion *in limine*), and many others are the subject of disputes about relevance and materiality." *Id.* at 3. None of these objections undercuts their status as facts. Nor does accepting a fact as not legitimately subject to dispute foreclose a party from arguing that the court should not consider that fact or give it little to no weight. Trials in the Court of Chancery are bench trials. Consert's motion *in limine* and its arguments about relevance and materiality rest on the premise that the judge can disregard or give the appropriate degree of weight to particular evidence. A judge can as readily disregard or give the appropriate degree of weight to a fact.

None of Consert's positions justified its reactionary response to Itron's efforts to streamline the presentation at trial through Admitted Facts. Consert revealed its hostility

15

to Itron's efforts most clearly by its flat refusal to engage in discussion regarding the substantially reduced number of Admitted Facts that Itron included in its second draft of the Proposed Order. Rather than conferring, Consert broke off discussions and said it would accept only sixteen rudimentary background facts. It is inconceivable that after two years of discovery, there are only sixteen facts not legitimately subject to dispute.

Given Consert's behavior and proffered excuses, the court is forced to conclude that Consert did not confer in good faith as required by Rule 16. As a retrospective remedy, Consert shall pay the attorneys fees and expenses incurred by Itron relating to (i) the preparation of the Proposed Order, including the time spent meeting and conferring about the Proposed Order and (ii) briefing and arguing the current motion.

As a prospective remedy, the parties shall meet and confer in good faith regarding Admitted Facts. Consert's two most senior non-Delaware lawyers and its two most senior Delaware lawyers shall meet and confer in person with their counterparts from Itron. In advance of the meeting, Consert's counsel shall provide a written response addressing each of the proposed facts in Itron's second draft of the Proposed Order. The response to each proposed fact shall state whether Consert disputes the proposed fact. If the fact is disputed, then Consert's counsel shall explain in terms specific to that proposed fact why it is disputed or stated inaccurately. If Consert's counsel contends that a fact is contested, the response shall identify the evidence on which Consert relies. During the in-person meeting, the senior lawyers shall review, one by one, each of the items and attempt to reach agreement. A court reporter shall transcribe the meeting.

16

After the meet-and-confer session, the parties shall file a supplemental stipulation identifying any agreed-upon Admitted Facts. In addition, Itron may file a proposed form of order identifying proposed Admitted Facts, citing the source of each proposed Admitted Fact, explaining why the court should deem it admitted or otherwise not requiring proof at trial, and addressing the grounds for opposition presented by Consert during the meet-and-confer session. Consert may respond, but may not advance any grounds for opposition not raised during the meet-and-confer session.

## III. CONCLUSION

Itron's motion is granted. The parties shall proceed in accordance with this opinion.