IN THE SUPREME COURT OF THE STATE OF DELAWARE


LAURA M. ALLEN,                    §
                                   §    No. 363, 2020
    Respondent-Below,          §
    Appellant,                 §
                                   §    Court Below:  Family Court
    v.                         §    of the State of Delaware
                                   §
CHARLENE L. SCOTT,                 §
                                   §    C.A. No.  CS19-01259
    Petitioner-Below,          §              19-05127
    Appellee.                  §
                                   §


Submitted:    June 30, 2021
Decided:      July 26, 2021


Before **SEITZ**, Chief Justice; **VALIHURA**, and **TRAYNOR**, Justices.

Upon appeal from the Family Court.  **REVERSED** and **REMANDED.**

Adam D. Windett, Esquire, Hopkins & Windett, LLC, Dover, Delaware for Appellant.

Julianne E. Murray, Esquire, Murray, Phillips & Gay, Georgetown, Delaware for Appellee.


**VALIHURA**, Justice:

Appellant Laura M. Allen appeals a September 30, 2020 Family Court Ancillary Order determining the division of property following her divorce from Appellee, Charlene L. Scott, on September 9, 2019.[1] Allen asserts that the trial court abused its discretion in designating funds used to purchase real property in Colorado as "marital" because the parties' Ancillary Pretrial Stipulation described the funds as "premarital." Allen further contends that the Family Court abused its discretion in dividing certain pieces of marital property in the marital estate 60/40 in Scott's favor contending that the court's decision was not based on a logical or orderly process and was tainted by the court's error on the first issue. Scott argues that no abuse of discretion occurred, and in any case, that Allen waived the second issue by failing to raise it in her Motion for Reargument.

We hold that because both parties stated in the Ancillary Pretrial Stipulation that the funds used to purchase the Colorado property were premarital in character, and because neither party moved to amend the stipulation to revise that characterization until after the evidentiary record had closed, there was no triable issue on that question. We, therefore, **REVERSE** the Family Court and **REMAND** for consideration of Scott's alternative contention that the down payment for the Colorado property was a gift unto the marriage.

As to Allen's second issue, we do not find any abuse of discretion in the Family Court's distribution of the remaining marital property, but the Family Court retains the discretion on remand to adjust that distribution to the extent its decision on remand regarding the Colorado down payment funds affects the other 11 *Del. C.* § 1315 factors.

---

[1] *S. v. A.*, No. CS19-01259, at 1 (Del. Fam. Sept. 30, 2020) [hereinafter "Fam. Ct. Order at __"]. Pseudonyms are used in accordance with Supr. Ct. R. 7(d).

2

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

### A. The Parties' Marriage and Separation

Scott and Allen were married on May 3, 2017, and separated during the second week of February 2019.[2] The parties were in a relationship for approximately eleven years prior to the marriage.[3] They moved to Colorado in late 2018 or early 2019 when Allen accepted a position as medical director of a women's medical facility, and they purchased a home in Colorado for about $740,000.00 to $750,000.00.[4] At that time, Allen's salary was $360,000.00, and she paid the down payment for this home in the amount of $150,719.00 and listed both parties' names on the home's title.[5]

After approximately three weeks of living in the Colorado home, the parties moved back to Delaware. They sold the Colorado home for $715,000.00 in June 2019 at a loss and obtained the $72,388.78 in proceeds at issue.

### B. The Proceedings Below

Scott filed a Petition for Divorce on February 18, 2019, resulting in a Final Decree of Divorce on September 9, 2019 that reserved jurisdiction over ancillary issues, including property division. The parties submitted an Ancillary Pretrial Stipulation ("Stipulation") on April 23, 2020, which the court entered as an Order the following day.[6] In the

---

[2] Fam. Ct. Order at 1, n.1 (explaining that the parties dispute the actual date-of-separation but that the exact date is not relevant to the ancillary matters).

[3] *Id.* at 3.

[4] *Id.* at 6.

[5] *Id.* at 6–7.

[6] App. to Opening Br. at A-23 [hereinafter "A-___"] (Ancillary Pretrial Stipulation).

Stipulation, both parties expressly stated that Allen used premarital funds to make the down payment on the Colorado home.[7]  Although Scott expressly acknowledged that the funds were premarital, she argued that the proceeds from the sale were marital and were subject to division because the down payment was a gift unto the marriage.  Specifically, Scott stated that:

> This asset was voluntarily jointly titled notwithstanding that [Allen] made a downpayment [sic] of one hundred and fifty thousand, seven hundred and nineteen ($150,719) dollars, *utilizing her premarital funds. This was a gift unto the parties' marriage*, thus *this asset is marital in nature*, subject to division by the Court. Recognizing that the downpayment [sic] on this house was made by the Respondent *with otherwise non-marital funds*, the Petitioner is seeking a fifty-fifty division of this asset, thus she will request fifty (50%) percent of the escrowed proceeds from the sale of this asset, with said net proceeds totalling [sic] seventy-two thousand, three hundred eighty-eight dollars and seventy-eight cents ($72,388.78).[8]

Likewise, in the Stipulation Allen stated that "[i]t is undisputed that [Allen] made a downpayment [sic] in the amount of $150,719.00 on the Colorado home using her premarital funds."[9]

The Stipulation reflects the parties' disagreement as to whether the down payment, made using Allen's premarital funds, was a gift unto the marriage.  Scott stated:

> [Allen] gifted approximately one hundred and fifty thousand ($150,000) dollars to the marriage by virtue of the acquisition of a home in Colorado. The sales proceeds from the Colorado property, totalling [sic] approximately

---

[7] A-13 (Ancillary Pretrial Stipulation).

[8] *Id.* (emphasis and alterations added).

[9] *Id.*  In her opening brief before this Court, Allen acknowledges that "the classification of the funds was not specifically stipulated to in the agreement," but she argues that "the intent of the parties could not have been clearer."  Corr. Opening Br. at 15–16.  We agree and the Family Court did find that "the parties stipulated in the Pretrial Stipulation that [Allen] paid the down payment of the parties' Colorado home using premarital funds."  Fam. Ct. Order at 8.

seventy-two thousand, three hundred and eighty ($72,380) dollars should be split equally between the parties, as the Colorado house was a gift unto the marriage by [Allen].[10]

Allen countered by denying "that her premarital down payment on the Colorado home was a 'gift unto the marriage' and seeks credit for same."[11]

At the June 23, 2020 hearing on the ancillary matters, Allen testified that she used "private funds" from her "personal checking account" to pay the down payment on the Colorado home. She did not specifically use the term "premarital" in her discussion of the down payment.[12] But there was also no further questioning as to the nature of the funds during her cross-examination.[13] In closing, Scott's counsel, seizing on Allen's use of the terms "private funds" and "personal checking account," argued that:

> "[T]here was no testimony nor documentation that showed where [the down payment] came from. We don't know if those were premarital funds, we don't know if those are marital funds. We don't know because there was no documentation provided to the Court."[14]

Allen's counsel responded that "clearly that money came out of her individual account that was not part of the marital estate."[15]

---

[10] *Id*. at A-21.

[11] *Id.*

[12] A-345 (Hearing Transcript).

[13] A-369–70.

[14] A-397.

[15] A-398.

As a result of Scott's closing argument, both parties submitted letters to the Family Court after the hearing addressing the nature of the funds.[16] Allen's letter referred to the Stipulation and argued that Scott's counsel had "confirmed said funds were premarital during his recitation of the issues," and that the issue was whether the funds were a "gift unto the marriage."[17] Counsel for Scott responded that, because the two separate accounts held by Allen during the marriage saw a combined marital loss of only $101,675.27, it was "impossible" that the down payment had been made using only premarital funds.[18] Scott continued to assert, in the alternative, that the funds were a gift unto the marriage.[19]

The Family Court held in its September 30, 2020 Ancillary Order that Allen's use of the terminology "separate account" rather than "premarital funds" constituted a material change in the Stipulation which the parties had an affirmative duty to update.[20] The Family Court reasoned that just as the parties had corrected the Stipulation as to the date-of-separation balance on a Wells Fargo bank account, Allen's testimony "brought to the

---

[16] App. to Answering Br. at B-001–03 [hereinafter "B-___"] (Letter from Melissa Hopkins, Esq. to Family Court & Letter from Thomas E. Gay, Esq. to Family Court).

[17] B-001. We note that during the recitation of the issues, Scott's counsel stated that the "down payment [was] made by [Allen]," and did not specifically address the marital or premarital characterization of the funds. A-251 (Hearing Transcript).

[18] B-002. Allen held a separate Wells Fargo Checking Account with a date-of-marriage value of $91,513.53 and a date-of-separation value of $99,259.34. Fam Ct. Op. at 13; A-16 (Ancillary Pretrial Stipulation). Allen also held a separate Wells Fargo Savings Account with a date-of-marriage value of $108,234.83 and a date-of-separation value of $6,559.56. Fam. Ct. Op. at 13.

[19] B-003 (Letter from Thomas E. Gay, Esq. to Family Court).

[20] Fam. Ct. Order at 9 ("The litigants are hereby bound in the ancillary proceedings by the stipulations made above, absent a showing of good cause and amended Court Order and *have an affirmative duty to provide the Court with any material change in information*.") (emphasis added by the Family Court) (quoting the Ancillary Pretrial Stipulation).

6

attention of the Court" that "she made the down payment for the Colorado home using funds in a separate account, rather than a premarital account."[21] Thus, it found "a material change in information" occurred when Allen "testified that she used funds from a separate account to make the down payment on the Colorado home, rather than using premarital funds."[22] The court further found at the June 23, 2020 hearing that Allen "provided no evidence to indicate that she paid the down payment of the parties' Colorado home using premarital funds."[23] Thus, the court concluded that the parties purchased the Colorado home "using funds stemming from the capital from both parties' employment."[24] Accordingly, the court held that the equity in the Colorado property was marital, and it awarded Scott one-half of the proceeds from the property's sale.

In addition, the Family Court held that a 60/40 allocation of certain other pieces of marital property was appropriate after considering the statutory factors in 13 *Del. C.* § 1513. The Family Court imputed Allen with an annual income of $350,000.00 despite her assertion that she was earning $100,000.00 per year because it found that Allen had made approximately $400,000.00 annually for thirteen years as a surgeon and that she had voluntarily chosen to open her own medical practice instead of keeping her position in Colorado. Allen opened her practice in November 2019 after taking out a commercial loan of $341,000.00 and was taking a monthly income of $1,000.00. At the time of the Order,

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

Allen suffered from Crohn's disease and was fifty years old; Scott was in "excellent health" and was fifty-six years old. The Court imputed Scott, a physical therapist, with an annual income of $105,000.00, which was equal to her stipulated current income and the highest income she earned while residing in Delaware.[25] Neither party requested alimony and both parties contributed financially to the marriage and home.

After the Family Court issued its Order, Allen filed a Motion for Reargument Pursuant to Family Court Civil Rule 59(e) on October 15, 2020.[26] In the Motion, Allen urged the Family Court to revise the Order to reflect that the down payment funds were premarital, because "to hold otherwise results in a contradictory conclusion" in light of the Family Court's earlier Order accepting the Stipulation wherein the parties had agreed the down payment funds were premarital.[27] Allen argued further that she "was only put on notice of [Scott's] argument that the Colorado home down payment was a 'gift unto the marriage,' not whether or not the funds were premarital in nature."[28] Allen contended that "had the court amended the [Stipulation] to reflect that [Scott's] position had changed concerning the premarital nature of the Colorado down payment, she would have had an

---

[25] *Id.* at 5, 19. During the coronavirus pandemic, Scott was furloughed for six weeks, receiving $900.00 per week in unemployment income, followed by two weeks of part-time work. The court found that Scott is confident she will be able to remain at her current place of employment. Prior to the marriage, Scott earned approximately $165,000.00 per year, but no evidence was presented showing that she had employment opportunities in Delaware that would pay $165,000.00. After the parties moved to Delaware in 2017 and before accepting her current position, Scott earned approximately $20,000.00 to $24,000.00 per year in different part-time positions. *Id.* at 19.

[26] A-58–116 (Motion for Reargument).

[27] A-63.

[28] A-61.

opportunity to present evidence countering this material change."[29] Allen further argued that even if the down payment were construed as a gift unto the marriage and the proceeds from the sale were still divided, the Family Court would likely assign her a higher percentage of the marital distribution overall in light of this "extraordinary contribution" to the marital estate.

In her response to the Motion, Scott acknowledged that "the parties stipulated in the [sic] prior to Trial that [Allen] paid the down payment on the parties' Colorado home, using premarital funds."[30] However, Scott stated that at the June 23, 2020 Hearing, Allen said the funds had been paid out of a "separate account," and that the court had properly found Allen's statement to be a material change that permitted the Stipulation to be amended at trial.

The Family Court denied the Motion because it found that Allen had failed to show that the court had overlooked or misapprehended any fact or law affecting the outcome of its prior decision.[31]

### C. The Parties' Contentions on Appeal

On October 30, 2020, Allen filed a Notice of Appeal in this Court from the Family Court's Order. Allen raises two issues. *First*, Allen argues that it was an abuse of discretion to determine that the down payment for the purchase of the Colorado home consisted of marital funds given the parties' agreement to the contrary in the Stipulation.

---

[29] A-62 (alteration added).

[30] A-119 (alteration added) (Answer to Motion for Reargument).

[31] A-133–34 (Order Denying Reargument dated December 22, 2020).

9

*Second*, Allen challenges the Family Court's distribution of the remaining marital property as an abuse of discretion because its decision was "logically tainted" by its erroneous characterization of the down payment funds. For reasons stated herein, we agree that the Family Court erred as to the down payment funds. Accordingly, we reverse and remand for further proceedings as explained below.

## II. SCOPE AND STANDARD OF REVIEW

When reviewing a Family Court decision dividing property upon divorce, this Court "review[s] the facts and the law, as well as the inferences and deductions made by the trial judge."[32] Conclusions of law are reviewed *de novo*.[33] If the Family Court correctly applied the law, "we review for an abuse of discretion."[34] We will disturb the Family Court's factual determinations only if they are clearly wrong.[35]

## III. ANALYSIS

### A. The Family Court Abused its Discretion when Designating the Source of the Funds for the Colorado Home as Marital

As a general matter, agreements entered pursuant to pretrial conferences and pretrial stipulations are binding court orders unless they are formally amended.[36] Such agreements

---

[32] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008) (citing *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979)).

[33] *Id*. (citing *Mundy v. Devon*, 906 A.2d 750, 752 (Del. 2006)).

[34] *Id*. (citing *W. v. W.*, 339 A.2d 726, 727 (Del. 1975) (per curiam)).

[35] *Glanden v. Quirk*, 128 A.3d 994, 999 (Del. 2018) (citing *Roberts v. Roberts*, 19 A.3d 277, 280 (Del. 2011)).

[36] *C.f. Perry v. Neupert*, 2019 WL 719000, at *28 (Del. Ch. Feb. 15, 2019) ("A trial court may, in the exercise of judicial discretion, upon proper cause shown, relieve a party from a stipulation entered into in the course of a judicial proceeding when it appears that such relief is necessary to prevent manifest injustice to the parties seeking it and that the granting of such relief will not place

can "help[] to narrow and frame the issues for the trial court."[37]

In *S.M.C. v. S.C.*, the Family Court held the parties in a property division proceeding to their pretrial stipulations.[38] The stipulations in that case, like the one here, explicitly imposed on the parties an "affirmative duty to provide the Court with any material change in information."[39] The Family Court refused to permit a party in *S.M.C.* to submit evidence supporting a recently-discovered change in equity in a marital motor vehicle.[40] The Family Court reasoned that the pretrial stipulation had identified those assets in agreement and those assets in dispute, and neither party had placed the value of the vehicles in dispute, nor was there a motion to amend or supplement the stipulation.[41]

Here, the parties entered into a binding stipulation that unambiguously referred to the funds used for the down payment as premarital, that stipulation was made an Order of Court, and neither party moved to amend the stipulation.[42] As such, there was no factual

---

the adverse party at any disadvantage by reason of having acted in reliance upon the stipulation.") (alteration omitted) (quoting 73 Am. Jur. 2d *Stipulations* § 12).

[37] *State Farm Mut. Auto Ins. Co. v. Spine Care Del., LLC*, 238 A.3d 850, 857 (Del. 2020).

[38] *S.M.C. v. S.C.*, 2006 WL 4552006, at *5 (Del. Fam. Sept. 27, 2006).

[39] *Id.*

[40] *Id.*

[41] *Id.* Fam. Ct. Civ. R. 52(d) formerly governed ancillary pretrial stipulations but has since been replaced by Fam. Ct. Civ. R. 16(d). *Order Amending Rules 16, 16.1, 16.2, 36, 52, 101, 300, and 501 and Adding Rules 16.3 and 16.4 of the Fam. Ct. Rules of Civ. Proc.* (Del. Fam. Oct. 17, 2017) (ORDER) (available at https://courts.delaware.gov/rules/pdf/FamilyCourtCivilRulesAmendment EffJan2018.pdf).

[42] *See* Ans. Br. at 5 (acknowledging that Scott first challenged the stipulated premarital character of the funds "at the conclusion of the presentation of evidence" by way of argument).

question for the Family Court to address related to the classification of the funds used for the down payment at the time the June 23 hearing began.

A material change in information that permits the court to modify a pretrial stipulation may occur, for example, if the issue could not have been considered at the time of the stipulation. In *R.S.M. v. G.K.M.*, a divorcing couple had agreed to assign the former marital home to the wife and had stipulated as to its fair market value.[43] On the day of the trial, the wife sought to introduce evidence of a different valuation and of costs to repair, because she discovered water flowing through the foundation of the home a week earlier. Reasoning that the water damage "occurred approximately one week before trial and could not have been contemplated as an issue at the time of the Pre-Trial Conference," the Family Court allowed the evidence.[44] But, "[b]ecause of the lateness of this request," the Family Court likewise granted the husband thirty days to collect and submit his own evidence as to the cost of repair.

By contrast, the designation of the down payment funds here was contemplated at the time of the Stipulation, as both parties acknowledged the funds were premarital and that both had separate accounts when they married. Neither party sought to introduce evidence contravening that stipulated fact. Neither party sought to challenge the stipulated fact until after the evidentiary record had closed. Allen's testimony that she used "private funds" from her "personal checking account" does not necessarily contradict her assertion

---

[43] 2008 WL 1947915, at *1 (Del. Fam. Mar. 19, 2008).

[44] *Id*. at *2.

in the Stipulation that the funds were premarital. Nor did she assert that the funds were marital during her testimony.[45] The thrust of Scott's argument, before the Family Court and here, is that Allen failed to produce evidence at the hearing that proved the down payment funds were premarital.[46] But there was no need for Allen to submit evidence on that point as she had no notice that the characterization of those funds was at issue. With that fact already stipulated, and with no notice that the nature of the funds was contested, Allen was relieved of the burden of producing exactly that evidence.[47]

Further, neither party moved to amend that Court Order, and the record of the direct and cross examinations during the hearing does not suggest the parties were intending to effect a material change regarding the classification. The source of the down payment funds was not a triable issue, only the question of whether the down payment was a gift unto the marriage. The Family Court abused its discretion in classifying the funds as

---

[45] A-345 (Hearing Transcript). Scott's alternative argument that 13 *Del. C.* § 507(a) empowers the Family Court to "reform" the stipulation is likewise unavailing. Section 507 grants the Family Court exclusive jurisdiction over "over the construction, reformation, enforcement and rescission of agreements between. . . former spouses concerning. . . the division and distribution of marital property." The Family Court's jurisdiction is not contested.

[46] Ans. Br. at 5 ("The crux of the issue is that when Allen testified she did not specifically state that the funds used to purchase the Colorado property were premarital."); *id.* at 7 ("The Court pointed out that Allen was unable to show that she used premarital funds and that she provided no evidence to indicate that she paid the down payment for the parties' Colorado home using premarital funds.").

[47] *See Gertrude L.Q. v. Stephen P.Q.*, 466 A.2d 1213, 1217 (Del. 1983) (defining a stipulation as "in effect, an agreement or admission made in a judicial proceeding by the parties thereto in respect to same [sic] matter incident to the proceeding for the purpose of avoiding delay, trouble, and expense") (alteration in original) (quoting *Application of Wilmington Suburban Water Corp.*, 203 A.2d 817, 832 (Del. Super. 1964)); *see also Itron, Inc. v. Consert Inc.*, 109 A.3d 583, 588 (Del. Ch. 2015) ("[T]he existence of material disputes of fact means that the parties should focus their trial time on those disputes of fact, rather than wasting resources by refusing to recognize that other facts are admitted or not legitimately subject to dispute.").

marital. On remand, the Family Court should consider whether the premarital down payment was a gift unto the marriage.

*B. The Family Court Retains Discretion to Adjust the Distribution on Remand*

Based on its weighing of the statutory factors set forth in 15 *Del. C.* § 1513(a), the Family Court determined that a 60/40 division of certain marital assets in Scott's favor was equitable.[48] Allen contends that the court's erroneous conclusion that the Colorado home was purchased with marital funds affected that analysis and necessitates a revision of that division.[49]

"This Court will not disturb the Family Court's consideration of these factors and the resulting division of marital property unless it abused its discretion."[50] Weighing the statutory factors is "uniquely within the province of the Family Court."[51]

Aside from the Family Court's treatment of the proceeds from the sale of the Colorado home, we see no abuse of discretion in the Family Court's careful examination of the statutory factors. But on remand, we have asked the Family Court to examine whether the premarital down payment was a gift unto the marriage. Depending on its resolution of that issue, the court may seek to revisit whether that determination necessitates any adjustment in its evaluation of how to equitably divide the marital

---

[48] Fam. Ct. Order at 18–24.

[49] Corr. Opening Br. at 28.

[50] *Glanden*, 128 A.3d at 1001.

[51] *Id*. at 1002.

14

property.  The Family Court therefore retains its full discretion to address these issues and in crafting a final disposition of the marital property on remand.

We also reject Scott's contention that Allen waived a challenge to the 60/40 allocation by failing to raise it in her Motion for Reconsideration under Family Court Civil Rule 59(e).  To be preserved on appeal, our rules require that a question be "fairly presented to the trial court."[52]  To be 'fairly presented' an issue already raised in the trial court need not be re-asserted in a Motion for Reargument.  To the contrary, a Motion for Reargument should not be a vehicle for one party who was unhappy with the Court's ruling to simply rehash the arguments already heard and decided by the Court.[53]  There is no requirement for a party to file a Motion for Reargument at all, and so there is no requirement that a Motion for Reargument contain every issue which the party intends to appeal.  Moreover, in her Motion for Reargument, Allen *did* raise the issue of the Family Court's allocation of the remaining marital property, arguing that "[i]f the down payment is found to be premarital upon reconsideration, this would likely result in a different outcome in that [Allen] would receive a higher percentage of the split due to her extraordinary contribution."[54]  Further, in the proceedings below, Allen urged the Family Court to adopt an allocation more favorable to her rather than a 60/40 allocation in Scott's favor.  For example, Allen asked the court to divide the equity in the Rehoboth Beach marital home

---

[52] Del. Supr. Ct. R. 8.

[53] *Martin v. Martin*, 857 A.2d 1037, 1039 (Del. Fam. 2004).

[54] A-63 (Motion for Reargument).

15

70/30 in her favor.[55]  The issue of the fairness of the 60/40 allocation in Scott's favor was fairly presented to the Family Court and was preserved on appeal here.

### IV.    CONCLUSION

Based upon the foregoing, we **REVERSE** the Family Court's judgment of September 30, 2020 in part and **REMAND** the matter for further proceedings consistent with this Opinion.

---

[55] Fam. Ct. Order at 5.  The Family Court found that the marital home had been purchased utilizing funds from the sale of two premarital properties that were jointly titled in the parties' names.  *Id*.