# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

January 15, 2026

Teresa Robinson
1041 Tremont Drive
Glenolden, PA 19036

Danielle Whitaker
144 W. 21st Street
Chester, PA 19013

Paul Whitaker
1021 Washington Avenue
Marcus Hook, PA 19061

Jone Posey
11 Belvue Terrace
Aston, PA 19014

Re:    *IMO the Estate of Joseph L. Weddington, Jr., deceased,*
       C.A. No. 2021-0951-SEM

Dear Parties:

This letter decision resolves the exceptions filed by Teresa Robinson ("Petitioner") to Senior Magistrate Molina's Final Report finding Danielle Whitaker, Jone Posey, and Paul Whitaker ("Respondents") to be the rightful heirs of Decedent Joseph L. Weddington, Jr., ordering Respondents to return items (the "Challenged Items") to the Decedent's estate (the "Estate"), and denying fees and costs. The exceptions are overruled and the Final Report is affirmed.[1]

---

[1] This decision cites to: C.A. No. 2021-0951-SEM, docket entries (by docket "Dkt." Number); petitioner's exhibits (by "PX" number); respondents' exhibits (by "RX" letter); and the hearing transcript, Dkt. 221 ("Hr'g Tr."). For clarity, this decision uses first names to identify the Whitakers. No familiarity or disrespect is intended.

## I.    FACTUAL BACKGROUND

I have reviewed the facts and law *de novo*, as I must under Delaware law, but I adopt the Senior Magistrate's clear and thorough statement of the factual background.[2]

The abbreviated version of the facts is that the Decedent, Joseph "Jody" L. Weddington, Jr., died intestate on March 26, 2021.  Two months later, Petitioner and Christopher Whitaker, Decedent's son and Respondents' brother, petitioned the New Castle County Register of Wills to open the Decedent's Estate.  The petition listed Respondents as the Decedent's children.[3]  The Register of Wills appointed the Petitioner and Whitaker as co-administrators of the Estate.[4]

Petitioner voluntarily distributed Estate assets to family members and distributed the Challenged Items[5] to the Respondents before paying the Estate's debts.  Later, Petitioner's relationship with Respondents soured and she sought to

---

[2] *See DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999) (requiring *de novo* review); Dkt. 222 ("Final Report") at 2–7 (setting out the factual background).

[3] C.A. No. 177738 AF, Dkt. 3.

[4] C.A. No. 2021-0951-SEM, Dkt. 1, Ex. B.  Christopher resigned as co-administrator on December 20, 2022, and was dismissed from this action on May 28, 2025.  Dkts. 186, Ex. D, 215.

[5] The Challenged Items are "(1) an approximately 1998 Chevrolet pickup truck, (2) a 1970 Harley Davidson motorcycle, with accessories and pipes, (3) a 2015 Chevrolet Trax, (4) an outdoor shed, (5) a power washer, (6) an air compressor, (7) a 15' trailer with hitch, (8) a 12' trailer with hitch, and (9) a 2'x4' pig roaster)." Final Report at 6.

recoup the Challenged Items from Respondents to pay the Estate's debts.  Petitioner also expressed doubt that Respondents were the Decedent's biological children.[6]

Petitioner filed a motion to compel the return of the Challenged Items.  The motion contained claims as well, which were procedurally improper.[7]  Petitioner corrected the procedural issues and asserted claims against Respondents by amending a preexisting Estate pleading.[8]  Petitioner seeks five forms of relief: (1) injunctive relief requiring Respondents to return the Challenged Items; (2) declaratory judgment that Respondents are not entitled to reimbursement for the cost of retitling certain assets; (3) declaratory judgment that Respondents are responsible for any diminution in value of the Challenged Items; (4) damages against Respondents and in favor of the Estate for any of the Challenged Items that are no longer in Respondents' possession; and (5) court approval for a sale of the Estate's assets for payment of debts.[9]

The Senior Magistrate held an evidentiary hearing on Petitioner's claims on June 4, 2025.[10]  In the Final Report, the Senior Magistrate found that Respondents were Decedent's rightful heirs and ordered Respondents to return the Challenged Items to the Estate.  The Senior Magistrate, however, declined to shift diminution-

---

[6] *See generally* Dkt. 60.

[7] *Id.*

[8] Dkts. 180, 181.

[9] Dkt. 180.

[10] Dkt. 220.

in-value costs to Respondents.[11]  Petitioner filed exceptions to the report on October 15, and I reassigned the case to myself for the limited purpose of resolving Petitioner's exceptions on October 20.[12]  Petitioner filed her opening brief on November 6.[13]

## II.  LEGAL ANALYSIS

Petitioner raises seventeen exceptions to the Final Report.[14]  Her exceptions fall mainly into two categories: exceptions to the Senior Magistrate's paternity findings, and exceptions to procedural irregularities and equitable considerations. Petitioner also advances a handful of other arguments addressed last.

### A.  Paternity

The Senior Magistrate correctly identified the relevant statute,[15] which states: [P]aternity is established by an adjudication before the death of the father or is established thereafter by preponderance of the evidence; except, that the paternity established under this paragraph is ineffective to qualify the father or his kindred to inherit from or through the child unless the father has openly treated the child as

---

[11] Final Report at 10.

[12] Dkts. 223, 224.

[13] Dkt. 232 ("Pet'r Opening Br.").

[14] *See* Dkt. 223. The court notes that Petitioner's brief contains several incorrect citations to case law.  I am not sure if the Petitioner used generative artificial intelligence ("GenAI") to  prepare the exceptions, but the parties should take note that failing to ensure the accuracy of  material prepared with GenAI and submitted to the court is harmful to the legal system. *See, e.g., An v. Archblock, Inc.,* 2025 WL 1024661, at  *2 (Del. Ch. Apr. 4, 2025)).

[15] 12 *Del. C.* § 508.

his, and has not refused to support the child.[16]"Proof by a preponderance of the evidence means proof that something is more likely than not."[17] It is a showing that "certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not."[18] This means that paternity is established if the Respondents present evidence making it more likely than not that the Decedent was their father. Further, Respondents must show that (a) the Decedent openly treated Respondentsas his own children and (b) the Decedent did not refuse to support the Respondents.

After review of the evidence presented, I agree with the Senior Magistrate that the Respondents established paternity by a preponderance of evidence.[19] The witnesses at the hearing credibly testified that Respondents were close to the Decedent, that the Decedent lived at their house when the Respondents were children, that everyone in the neighborhood knew and saw the Decedent with Respondents, and that Respondents remained close to the Decedent until his death.[20] This testimony did not appear coerced; nor was it subject to unacceptable memory

---

[16] *Id.* § 508(3)(b)(2).

[17] *In re Oxbow Carbon LLC Unitholder Litig.*, 2018 WL 818760, at *48 (Del. Ch. Feb. 12, 2018), *rev'd in part on other grounds sub nom. Oxbow Carbon & Mins. Hldgs., Inc. v. Crestview-Oxbow Acq., LLC*, 204 A.3d 482 (Del. 2019) (quoting *Agilent Techs., Inc. v. Kirkland*, 2010 WL 610725, at *13 (Del. Ch. Feb. 18, 2010)).

[18] *Id.*

[19] Final Report at 14.

[20] *See, e.g.*, Hr'g Tr. at 39:7–9 (Posey); *id.* at 75:9–76:8, 83:15–18 (S. Whitaker); *id.* at 99:15–100:7 (Walker); *id.* at 110:14–111:3 (T. Whitaker); *id.* at 122:7–16 (Harris); *id.* at 134:12–16, 141:12–20 (Bowman); *id.* at 151:21–24 (P. Whitaker).

lapses.[21] Respondents also presented photographs of the Decedent with Respondents and their families over the years.[22] Taken together, the Respondents provided a compelling narrative showing that the Decedent was Respondents' father, openly treated them as his children, and supported them.

Petitioner argues that the Senior Magistrate assigned too much weight to witness testimony and assigned too little weight to Respondents' issued birth certificates and other public records.[23] But Petitioner's argument that the Decedent's name is not on Respondents' birth certificates does not outweigh the compelling evidence that the Decedent was the Respondents' father.[24] In *Estate of Koon*, which the Senior Magistrate properly considered,[25] the court held that a birth certificate is not the only form of evidence of parentage.[26] The court may consider other forms of evidence.[27]

---

[21] *See* Pet'r Opening Br. at 23–24.

[22] RX-E; RX-F; RX-G; RX-H; RX-J.

[23] Pet'r Opening Br. at 4–5, 8–9, 25–27.

[24] *See Estate of Koon,* 1984 WL 136929, at *1 (Del. Ch. Dec. 11, 1984); *Hall v. Mundy*, 2025 WL 48157, at *4–5 (Del. Ch. Jan. 8, 2025), *reargument denied*, 2025 WL 763420 (Del. Ch. Mar. 11, 2025).

[25] *See* Pet'r. Opening Br. at 38–39.

[26] *See Koon*, 1984 WL 136929 at *1.

[27] *Id.*; *see also Hall*, 2025 WL 48157, at *4 (crediting testimony from witnesses describing the close relationship individuals had with their alleged father as children).

Petitioner also argues that the Senior Magistrate credited hearsay or unreliable statements when determining parentage.[28] But the Senior Magistrate's findings were proper. In the Court of Chancery, the judge has the discretion to "give the appropriate degree of weight to particular evidence" in accordance with the Delaware Rules of Evidence.[29] Here, the Senior Magistrate considered a range of evidence produced by both Petitioner and Respondents and weighed the evidence appropriately.[30]

I agree with the Senior Magistrate that Respondents met their burden of proving that the Decedent is their father by a preponderance of evidence. The current factual record is sufficient; no supplementation is needed. Petitioner's first, second, third, ninth, tenth, thirteenth, fifteenth, and seventeenth exceptions are overruled.

## B. Procedural Unfairness

Petitioner's second category of exceptions rely on procedural unfairness and alleged "favoritism toward Respondents."[31] In Petitioner's brief, she argues that there were many instances where Respondents were treated more favorably than she was.[32] Petitioner argues that the Senior Magistrate failed to acknowledge Respondents' dilatory conduct and failed to impose remedies for Respondents'

---

[28] Pet'r Opening Br. at 8–9.

[29] *Itron, Inc. v. Consert Inc.,* 109 A.3d 583, 592–93 (Del. Ch. Jan. 15, 2015).

[30] Final Report at 15.

[31] Pet'r Opening Br. at 21.

[32] *Id.* at 41.

intentional delay and interference with the proceedings. Petitioner asks the court to impose adverse inferences, sanctions, or cost-shifting on Respondents.[33]

The Senior Magistrate was lenient with all parties, as is appropriate with self-represented litigants.[34] And no party's conduct prejudiced the Petitioner's claims.[35]

The court does not shift costs or award sanctions lightly and only does so when a party's conduct is egregious.[36] There is no basis to shift costs here. Petitioner's fourth, sixth, seventh, eighth, eleventh, twelfth, and sixteenth exceptions are overruled.

### C. Other Exceptions

Petitioner also argues that the Senior Magistrate inaccurately attributed fault for estate mismanagement and mischaracterized the Decedent's final days. These exceptions are also overruled.

Petitioner argues that former co-administrator Christopher prematurely distributed the assets to Respondents and that the Senior Magistrate's finding of Petitioner's involvement was improper.[37] Petitioner also requests that the court

---

[33] *Id.* at 30, 38.

[34] *Beal Bank, SSB v. Lucks*, 791 A.2d 752, 756 (Del. Ch. Sept. 14, 2000).

[35] Pet'r Opening Br. at 27–28.

[36] *See, e.g., Matter of Estate of O'Neil*, 2024 WL 1317063, at *7 (Del. Ch. Mar. 28, 2024).

[37] Pet'r Opening Br. at 13–15.

vacate the Final Report to the extent that it finds that Paul was the primary care giver during the Decedents' final days.[38]

After reviewing the record, I agree with the Senior Magistrate's findings. Even if Petitioner did not personally distribute the Challenged Items, she still held the title of co-administrator and was responsible for their release. And whether Paul cared for the Decedent during his final days, as the witnesses testified, does not alter any aspect of the Final Report.[39] Petitioner's fifth and fourteenth exceptions are overruled.

### D. Respondents' Letter

Respondents filed a letter dated October 29, 2025, asking for reconsideration of the Senior Magistrate's order to return the Challenged Items, as well as requesting a stay of this litigation.[40]

Respondents' request was untimely.[41] Delaware Court of Chancery Rule 144(d)(1) requires that a notice of exceptions must be filed within eleven days of a Magistrate's Final Report.[42] The Senior Magistrate published her Final Report on October 10, 2025.[43] Respondents filed their letter to the court on October 31, 2025.[44]

---

[38] *Id.* at 33–35.

[39] Hr'g Tr. at 149:18–150:10 (P. Whitaker).

[40] Dkt. 227 ("Resp'ts' Letter").

[41] *See* Ct. Ch. R. 144.

[42] Ct. Ch. R. 144(d)(1).

[43] *See* Final Report.

[44] *See* Resp'ts' Letter.

Respondents' request also fails on the merits. Respondents ask the court to let them keep the Challenged Items.[45] But as the Senior Magistrate explained, the court must ensure that the Decedent's estate is properly administered.[46] To correctly administer an estate, an administrator must "collect the assets of the decedent, pay his or her debts and expenses," and only then "make distribution to the persons entitled thereto."[47]

Petitioner did not do so here, and that is the reason Respondents were able to obtain the Challenged Items when they did. The Senior Magistrate was correct to order the items returned so that proper administration of the Estate can occur. Respondents must return the Challenged Items to allow Petitioner to pay off any outstanding Estate debts. After this, Petitioner must distribute the remaining assets to the proper parties, including Respondents.

Balancing the equities in this case, a stay is also inappropriate.[48] Respondents have not shown that they will suffer harm by returning the Challenged Items. As the Senior Magistrate held, Respondents were wrong to refuse to return the Challenged Items when these issues began and must bear those costs themselves.[49]

---

[45] *Id.*

[46] Final Report at 12.

[47] *Id.* (citing *Gurney-Goldman v. Goldman*, 321 A.3d 559, 585 (Del. Ch. 2024) (citation modified)).

[48] *See Kirpat, Inc. v. Delaware Alcoholic Beverage Control Comm'n*, 741 A.2d 356, 358–59 (Del. 1998).

[49] Final Report at 13.

Further, proper administration of the Decedent's estate cannot be completed if the Challenged Items are not returned.

For the foregoing reasons, I adopt the Senior Magistrate's Final Report. All exceptions are overruled and the motion to stay is denied.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:    All counsel of record (by *File & ServeXpress*)